**Thaddeus KING, Jr., Petitioner-Appellee,**

**v.**

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellant.**

**No. 28696.**

United States Court of Appeals, Fifth Circuit.

July 6, 1970.

---

Gilbert J. Pena, Asst. Atty. Gen., Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Pat Bailey, Executive Asst. Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., Austin, Tex., for appellant.

Marvin O. Teague, Houston, Tex., for appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

## PER CURIAM:

 This is an appeal by the State of Texas from a state prisoner's application for writ of habeas corpus granted by the District Court, Southern District of Texas, on the grounds that the petitioner was denied effective assistance of counsel at his trial, 305 F.Supp. 636. We affirm.[1]

Thaddeus King, Jr., (hereinafter petitioner) was arrested on the night of January 24, 1966, for possession of heroin. Shortly thereafter, petitioner's aunt contacted an attorney (hereinafter First Attorney) to represent petitioner, and a fee was agreed upon and paid by her. In early February, First Attorney and an assistant (hereinafter Second Attorney) visited with the petitioner at the county jail and discussed his case with him for approximately twenty minutes.[2] On February 25th, an examining trial was held, at the conclusion of which petitioner was bound over to the grand jury. At this trial, petitioner was represented by Second Attorney. Other than these two contacts with lawyers, the petitioner was left in the dark as to the progress of his case until the day of his trial over seven months later.

1. Each case involving the constitutional issue of effectiveness of counsel depends on the facts—the specific conduct of the parties involved. See, e. g., Roberts v. Dutton, 5 Cir. 1966, 368 F.2d 465; Williams v. Beto, 5 Cir. 1965, 354 F.2d 698; MacKenna v. Ellis, 5 Cir. 1960, 280 F.2d 592. In assessing what the true facts are, the District Court is allowed much discretion as to the credibility of the witnesses testifying at the habeas corpus hearing under Rule 52(a),

F.R.Civ.P. The District Court here, through its Findings of Facts, has chosen to discredit much of the testimony of the state's witnesses and to accept much of that of petitioner's witnesses. Such decision is supported by the record in this case as is the following version of the facts.

2. Both First and Second Attorney testified that the interview lasted one to one and a quarter hours.

On the day of the trial, petitioner was contacted in the "holdover tank" in the courthouse by a third lawyer (hereinafter Third Attorney) and told by the latter that he would represent him at his trial. Petitioner testified that he did not know Third Attorney, had never talked to him, nor had he even heard his name mentioned.[3]

As to what then transpired, petitioner testified as follows:

A. I encountered [sic] [Third Attorney] as to [First Attorney's] whereabouts. I asked him if he would see [First Attorney] and please tell him I am up here, and I don't know if he notified him or anyone. I told him I would like to see him right away.

And he said, "What are you all going to do, are you going to pick a jury, too?"

And I said, "No, I don't think we will pick a jury, I will go before the Judge."

\* \* \* \* \* \*

Q. Then what happened?

A. He walked away, and about ten minutes later a bailiff came and said, "King."

And I said, "Yes".

And he said, "Come on," he said, "with me", and opened the door and I went with him, and on the way I asked him, "Has the trial started already?" I was thinking I was going to be a witness in Walton's (a co-defendant being tried separately) case. And he said, "No, your lawyer wants to talk to you," he say, and I was wondering why he hadn't come to the jail. And I said, "Okay".

I went to this courtroom and he opened the door and [Third Attorney] was sitting at the table and the court reporter, I imagine, just two other people were in the courtroom, and I said, "I don't see my lawyer."

And so [Third Attorney] said, "Come here". And he called me over. And, again, I asked [Third Attorney] I said, "Did you see [First Attorney]?"

And he said, "Oh, he will be along after awhile".

And I sat down, and he said, "Is this"—he handed me my preliminary record (transcript of examining trial) here and asked me "Is this what happened at your preliminary trial?"

And I began reading and [Third Attorney] let me read it. He didn't say anything else about representing me or whether he was going to represent me or not. So I began reading, and I say, "Yes, this is about what happened." "You are not going to get a jury? And I said, "No, [Third Attorney]".

At approximately this time the door opened to my left and the Judge was walking in. They were saying "Everybody stand up". So I looked around to see who was going to be tried, and at this point [Third Attorney] said, "The Judge appointed me to repsent you".

And, again, I said, "Why didn't [First Attorney] show?"

And he said, "That's all right". Said, "You waive the jury". And

---

3. All three attorneys stated that petitioner had been informed of an "office arrangement" among the three attorneys whereby Third Attorney shared office space with First Attorney and the two worked together on criminal cases often with a specified distribution of the profits. Third Attorney also stated that he had visited with petitioner in June or July before the trial. However, this testimony was not substantiated, was denied by petitioner and was excluded from the District Court's Findings of Facts.

I signed a waiver of the jury, and I kept mumbling between [Third Attorney] and myself, and the Judge got seated and said, "Be quiet".

And I looked around again to see if [First Attorney] was coming, and no [First Attorney].

So, he got his legal pad out after he had told me the Judge appointed him, and I didn't know whether I would be out of order to just ask him, or what have you, or stop the trial. I wasn't familiar here. And he turned over to the legal pad and marked on a piece of paper and asked me what happened.

And I say, "[Third Attorney], you can't defend me, you don't know anything about my case."

And he said, "Don't worry about it". And this is how my trial began, Lawyer Teague.

Q. Prior to this time had you and [Third Attorney] had any discussion whatsoever about your case?

A. I had never said anything to [Third Attorney] about my case prior to this.[4]

The trial itself lasted one hour and thirty-five minutes. The petitioner's signing of the waiver of jury form appears from the evidence to have been an informed and intelligent waiver as the consequences of his choice had been previously explained to him by First and Second Atttorneys. There does not appear to have been extensive discussion between Third Attorney and petitioner on the plea that should be entered, petitioner insisting he was not guilty. Nor was there any credible evidence that Third Attorney had engaged in plea bargaining with the District Attorney.

When the state offered into evidence the tinfoil of heroin, without which the state would admittedly have not had a case against petitioner, there was no objection made, nor any motion to suppress, even though the heroin was allegedly thrown from a car in which three people were riding and later picked up on the street by a police officer. There was no fingerprint evidence introduced by the state nor any other evidence introduced that would have connected the heroin to the petitioner.

As far as additional evidence which Third Attorney could have brought forth on petitioner's behalf, there were at least two other witnesses whose testimony may or may not have been favorable to petitioner. Third Attorney did not investigate or interview either of these witnesses.

Also at the trial Third Attorney specifically asked petitioner about past convictions to which petitioner responded he had been convicted fourteen years ago. While the answer was not responsive, the question was unnecessary and is indicative of lack of counselling with petitioner.

At the end of the trial, petitioner was sentenced to sixteen years. No effort was made to obtain a new trial or to appeal. Petitioner testified that before he was even aware that he was being tried, he was back in his jail cell without ever having had the opportunity to tell his side of the story.

The District Court, examining Third Attorney's file on petitioner's case, discovered therein only a single sheet of paper which was blank except for the notation, "Defendant, Thaddeus King, fee, $300.00" and the date "10–9–66— Closed" followed by Third Attorney's initials.[5]

---

4. Third Attorney testified that he had seen petitioner on other occasions and on the weekend before the trial but only as he was, in his own words, "passing through the jail corridors themselves, and he would talk to me at the peep-hole window there when other prisoners were lined up to discuss their particular cases with me". There was testimony from Third Attorney that he had read the transcript of the examining trial, but there was no evidence of extensive briefing of Third Attorney by Second Attorney.

5. Third Attorney testified that his notes had been lost.

The generally accepted standard by which to determine whether a defendant has been denied effective assistance of counsel has been set out in Brown v. Beto, 5 Cir., 1967, 377 F.2d 950, 957–958:

"The actual standard of incompetency applied by the overwhelming majority of courts is stated as follows: Incompetency of counsel such as a denial of due process and effective representation of counsel must be such as to make the trial a farce, sham, or mockery of justice." [Citation omitted.] This Court has defined "effective counsel" in terms of a "reasonable counsel" standard: "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." MacKenna v. Ellis, 5 Cir., 1960, 280 F.2d 592.

See also Odom v. United States, 5 Cir., 1967, 377 F.2d 853.

The cumulative effect of the above facts, as so found by the District Court and supported by the record, is that the petitioner was denied effective assistance of counsel guaranteed him by the Sixth and Fourteenth Amendments of the United States Constitution. All of the above facts, taken together, demonstrate that the petitioner's attorney at his trial was not "counsel reasonably likely to render and rendering reasonably effective assistance". MacKenna, supra, 280 F.2d at 599.

We conclude that the District Court, by measuring the above facts against this legal standard, was not clearly erroneous in its finding that "the legal services accorded petitioner were so poor that he did not have the opportunity to present his side of the story * * * [and] was, therefore, denied effective assistance of counsel, a fair trial, due process of law, and is entitled to habeas corpus". The Court's order that petitioner be discharged from the custody of the state without prejudice to the state to retry petitioner upon indictment is therefore

Affirmed.