**Rufus CHALK, Petitioner-Appellee,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellant.**

**No. 28733.**

United States Court of Appeals, Fifth Circuit.

July 6, 1970.

**226**

Ronald Luna, Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., Austin, Tex., for appellant.

Rufus Chalk, pro. per., appellee.

John Michael McMullen, Dallas, Tex., court-appointed, for appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

PER CURIAM:

This is the companion case to King v. Beto, 5 Cir. 1970, 429 F.2d 221. Both cases involve the constitutional question of effectiveness of the same attorney who happened to represent both petitioners at their separate criminal trials. In this case, as in *King,* supra, the petitioner exhausted his state post-conviction remedies and petitioned the District Court, Southern District of Texas, for writ of habeas corpus. A full evidentiary hearing was conducted, and petitioner was ordered discharged from appellant's custody to be retried. We affirm.

██ As we stated in *King,* supra, it is the particular facts in each case—the actual conduct of the attorney with relation to his client from arrest to final judgment—that determines whether the attorney has provided the constitutionally required effective assistance of counsel.[1] The only question here is whether the District Court was clearly erroneous in its Findings that:

(1) The petitioner was denied effective assistance of counsel;

(2) The petitioner did not make an intelligent waiver of his right to trial by jury.

Rufus Chalk (hereinafter petitioner) was arrested on August 18, 1966, and charged with robbery by firearms. He was placed in jail, and two weeks later he was contacted by the attorney in question in this case (hereinafter attorney). Someone other than petitioner contacted this attorney, and the record is unclear as to whether petitioner or some of petitioner's friends "employed" him.[2] The

1. Also emphasized in *King,* supra, and applicable here is the mandate of Rule 52 (a), F.R.Civ.P., that, in ascertaining what the particular facts of each case are, the district court be permitted discretion as to the demeanor and credibility of witnesses testifying at the habeas corpus hearing. See, e. g., United States v. Skolness, 8 Cir., 1960, 279 F.2d 350; 2B Barron and Holtzoff § 1134 (Rules Ed., 1961). The District Court's decision to discredit much of the attorney's testimony and accept much of the petitioner's, is supported by the record, as is the version of facts set out herein.

2. While the source of his legal fee is unclear, the attorney, according to his own testimony, expected it to accrue from the money purloined in the robbery and as yet unrecovered from friends of petitioner.

attorney conferred with petitioner for a short time during this initial visit. According to petitioner's testimony, the attorney merely made general inquiries as to how petitioner wanted to plead. The petitioner did not even know that this attorney was later to represent him at his trial.

The next time petitioner saw the attorney was at the trial nearly three months later.[3] On the day of the trial, the attorney contacted petitioner in the courthouse "holdover cell" where petitioner was first made aware that he was going to trial that day.

The trial itself lasted forty minutes, the defense taking only the last ten minutes. Petitioner asserted his innocence and made efforts to convince his attorney that his alibi defense was provable by readily available witnesses. Yet the only person to testify on behalf of petitioner was the petitioner himself.

The petitioner was tried in his prison garb. He requested that he be allowed to change into his civilian clothes, which were close at hand, but his attorney refused. The effect of this, though not so prejudicial as to raise a constitutional issue,[4] was an insinuation of guilt which could have been easily avoided.

The record of what actually transpired at petitioner's trial has been destroyed in accordance with a Texas law, but it has been established that the attorney made no objection to petitioner's arrest, though it was apparently made without a warrant and without probable cause. There is no evidence of any attempt to confer with petitioner after the trial to determine whether an appeal should be made.

■■ It is unnecessary to reiterate what was stated in *King*, supra, with reference to the standard by which counsel is judged effective or ineffective. The discussion there is equally applicable here. It is sufficient on this point that we emphasize the rule that the burden of showing findings of the district court to be clearly erroneous is a heavy one which, to be sustained, requires a clear demonstration that such findings are without adequate evidentiary support in the record, or were induced by an erroneous view of the law. Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774, 776. The record clearly supports the conclusion reached by the District Court below that " * * * the quality of the legal services accorded petitioner in this case were [sic] so poor that he did not have an opporunity to present his side of the story * * * ".

There is an additional issue here which, though connected with the effectiveness of counsel issue, is grounds by itself for requiring a new trial be held for petitioner. Testimony from the habeas corpus hearing reveals that petitioner did not make an intelligent waiver of his right to trial by jury. Petitioner, whose education ended at the fifth grade, testified that he did not know what he was signing when he signed the waiver of jury form presented to him before the trial:

> A. (By Petitioner) He [his attorney] left and he came back. When he came back he was calling me out to the court. He was at the entrance to the court, and he brought me over to the table and he had some papers and said, "Can you read and write?" And I said,
>
> Not very well."
>
> He said, "This is to make me your legal attorney, and just sign right here".
>
> Q. And did you sign a paper?
>
> A. I did sign a paper, sir.

---

3. The Examining Trial had been waived because an indictment had already been returned against petitioner before the attorney contacted him. However, the attorney made no effort to object to, or even inquire into, the validity of either the indictment or the waiver.

4. Petitioner was not tried before a jury. *See, e. g.*, Brooks v. State of Texas, 5 Cir., 1967, 381 F.2d 619.

Q. Did you later on learn what that paper was that you signed?

A. I didn't learn it until I got to the penitentiary—what it was.

Q. And after you got to the penitentiary what did you learn what that paper was?

A. A jury waiver.

Q. A jury waiver; did you intend to waive a jury?

A. No, sir. I wanted a jury trial because I wanted to prove my innocence.

\* \* \* \* \* \*

A. (By Petitioner) \* \* \* At the time of my arrest and trial I had no knowledge of any court or legal—what is right, what should go on in the court or what I was signing or what I was supposed to do.

\* \* \* \* \* \*

A. I didn't even know that I was tried until it was all over with, sir. I didn't know I was being tried.

\* \* \* \* \* \*

Q. Did [the] Judge \* \* \* ask you if you knew you were waiving a jury trial, the right to a trial by jury?

A. If he did I have no knowledge of it, then or now.

■■ Whether or not there has been an intelligent waiver of the right to a jury trial depends on the circumstances in each case. Adams, Warden v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1943). The District Court, being in the best position to examine the circumstances in this case, concluded:

It is the opinion of the Court that without further explanation an uneducated person, such as petitioner, would not immediately and readily understand the form and recognize the constitutional rights relinquished by executing same.

If there was any explanation to petitioned of this form, there was no testimony of such at the hearing before this Court \* \* \*

It must, therefore, be concluded that \* \* \* he did not intelligently waive his right to a trial by jury.

This conclusion is amply supported by the record and is, therefore, not clearly erroneous.

Affirmed.