UNITED STATES ex rel. Freddie M.
JOHNSON, Appellee,

v.

Robert L. JOHNSON, Superintendent,

Appeal of the COMMONWEALTH OF
PENNSYLVANIA.

No. 75–1649.

United States Court of Appeals,
Third Circuit.

Argued Nov. 13, 1975.

Decided Feb. 26, 1976.

Certiorari Denied May 24, 1976.

See 96 S.Ct. 2214.

Bonnie B. Leadbetter, Asst. Dist. Atty., Philadelphia, Pa., Steven H. Goldblatt, Abraham J. Gafni, F. Emmett Fitzpatrick, Philadelphia, Pa., for appellant.

Marc J. Sonnenfeld, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellee.

Before ALDISERT, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

We have before us for the second time the petition of Freddie M. Johnson for a

writ of habeas corpus. In 1973, we remanded this case to the district court for an evidentiary hearing on Johnson's claim that he was denied effective assistance of counsel at his state murder trial in 1968.[1] Following an evidentiary hearing devoted to trial counsel's efforts to locate a potential alibi witness, the district court, on January 29, 1975, denied Johnson's petition. Rehearing was sought and granted, and after a second evidentiary hearing concerning aspects of trial counsel's representation other than his efforts to locate the putative alibi witness, the district court, on April 22, 1975, vacated its earlier order and granted petitioner habeas corpus relief on the ground that he was denied effective assistance of counsel. For the reasons set forth below, we reverse.

I

At the first evidentiary hearing, Johnson testified that prior to trial he had informed his court-appointed counsel that one Willie Davis could provide him with an alibi.[2] Davis and Johnson were friends and resided in the same boarding house. According to petitioner, on the day of the crime, he and Davis spent the morning at a local bar and then returned to their respective rooms at approximately 1:00 or 2:00 p. m. Petitioner then slept until about 5:00 p. m., at which time he went to Davis's room and played cards with Davis for the rest of the evening. While this testimony does not establish a complete alibi since the murder occurred at 3:00 p. m. only five blocks from petitioner's rooming house, Johnson testified that the structure of the rooming house was such that had he left his room, Davis, who lived directly beneath Johnson, would

have been virtually certain to have either seen or heard him leave.

Trial counsel considered Davis's potential testimony important, app. at 44a, but was unable to locate him. Counsel testified that he made repeated efforts to find Davis, including a "half dozen" visits to the neighborhood, but all those questioned by counsel did not know of Davis's whereabouts; he also visited a local bar and the unemployment office in search of Davis. Unbeknownst to trial counsel, the police had been able to locate Davis prior to trial and had obtained an unsworn statement in which Davis denied being with Johnson on the day of the murder. In addition, Davis was in the witness room during Johnson's trial as a potential Commonwealth witness, but trial counsel was unaware of Davis's presence.[3]

In its first opinion on January 29, 1975, the district court concluded that trial counsel's efforts to locate Davis were below the level required of normally competent counsel. As indicative of trial counsel's inadequate efforts to locate Davis, the court noted counsel's failure to seek authority to retain a private investigator,[4] to issue a subpoena or ask for a bench warrant, or to enlist the aid of the police or district attorney's office. Nonetheless, the court denied Johnson habeas corpus relief because he had failed to demonstrate, by a preponderance of the evidence, that he had been prejudiced by his counsel's failure to locate Davis. The court stated that even if Davis had testified and had corroborated petitioner's story, the probative force of his testimony would have been seriously weakened by the statement he had previously given to the police.

---

1. *United States ex rel. Johnson v. Johnson,* 471 F.2d 264, 267 (3d Cir. 1973). We reviewed the procedural history of this case in our earlier opinion.

2. Trial counsel's notes of his interview with Johnson shortly after arrest confirm the fact that the attorney was apprised of Johnson's putative alibi witness.
 At the evidentiary hearing, Johnson's habeas corpus counsel conceded that a second alleged

alibi witness, identified only as "Poopsie," would not have shed any light on the situation." App. at 32a.

3. Petitioner does not contend that Davis was deliberately secreted by the police or district attorney's office.

4. Under Pennsylvania law a defendant in a capital case may move for appointment of an investigator. 19 P.S. § 784 (1964).

The second evidentiary hearing was devoted to two newly asserted bases of incompetence: the variance between trial counsel's opening statement in which he implied that he would produce witnesses to prove that Johnson was in his room at the time of the murder [5] and the fact that no witnesses were called on behalf of the defense; and trial counsel's advice to petitioner not to testify at trial, which advice petitioner alleged was based on a misunderstanding of Pennsylvania's law of evidence. Trial counsel testified that he advised petitioner not to testify because he was concerned that Johnson's prior criminal record might be disclosed to the jury and because he did not believe that Johnson would be a good witness. Trial counsel could not remember why he had made the challenged remark in his opening statement. App. at 155a–63a.

On April 22, 1975, the district court vacated its earlier decision and granted the writ. The court held that trial counsel's representation had been ineffective in three respects and that petitioner's case had been prejudiced thereby. First, counsel had advised petitioner not to testify without knowing just what Johnson's actual criminal record was and without a knowledge or understanding of the Pennsylvania law on the admissibility of a defendant's prior criminal record. Second, counsel had made a remark in his opening statement in which he implied that he would produce witnesses to prove Johnson was at home at the time of the murder when in fact counsel had decided long before trial not to call petitioner as a witness and could not locate Davis, the only other person who could have placed Johnson in his room at the time of the crime. Third, counsel's steps to locate Davis were inadequate. Reversing its earlier position, the court found that petitioner had been prejudiced "in the sense that, had an adequate investigation been made, the glaring discrepancy between counsel's opening statement and his subsequent conduct of the trial would not have occurred."

## II

The Commonwealth asserts that the district court erred in considering as bases for a finding of ineffective assistance of counsel (1) trial counsel's advice to petitioner not to testify at trial and (2) the variance between trial counsel's opening remarks and his conduct of the trial.

Initially, the Commonwealth argues that our remand order of January 16, 1973 [6] limited the district court to consideration only of the adequacy of trial counsel's efforts to locate Willie Davis. We agree with the district court that the Commonwealth's interpretation of our mandate is "unduly narrow." We remanded for consideration of the alibi witness claim because that was the only contention that was presented to us. Our order was not intended to foreclose district court consideration of other instances of ineffective representation that might be disclosed by an evidentiary hearing; [7] indeed, our order left open the question whether trial counsel's representation in respects other than the location of alibi witnesses was adequate. While a lower court cannot reconsider issues laid to rest by an appellate court mandate, the lower court on remand is certainly free to consider issues left open by the appellate

---

5. Counsel stated, in part:
 We will produce evidence which you will later hear that Freddie Johnson at the time of this homicide was at home where he should be, that he was nowhere near 1137 South Street, the scene of the killing; that he . . knew nothing about the circumstances of the killing until, of course, later, much later when he was apprized (sic) of it.
 App. at 222a.

6. The order stated:
 The judgment of the district court will be reversed and the case remanded for a hearing on Johnson's claim that his trial counsel failed to afford him normally competent representation in his murder trial when he neglected to obtain the testimony of two witnesses, in accordance with the opinion of this Court.

7. In this regard, we note that Johnson was not represented by counsel at the time of our order and that we had recognized that the state evidentiary hearing was inadequate regarding Johnson's ineffective assistance of counsel claim.

court. *Sprague v. Ticonic National Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184, 1187 (1939); *Banco Nacional de Cuba v. Farr,* 383 F.2d 166, 177 (2d Cir. 1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968).

■ The Commonwealth also argues that Johnson failed to present these theories of ineffective assistance of counsel to the state courts and that thus the district court was barred from considering them by the exhaustion doctrine. We disagree for two reasons. First, while the emphasis of Johnson's claims in the state courts may have been on the investigative aspects of trial counsel's representation, the general issue of counsel's trial representation was fairly presented to the state courts.[8] *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438, 443 (1971); *Moore v. DeYoung,* 515 F.2d 437, 445 (3d Cir. 1975); *United States ex rel. Geisler v. Walters,* 510 F.2d 887, 892 (3d Cir. 1975). Second, even if we were to conclude that these theories of ineffective assistance of counsel had not been adequately presented to the state court, Johnson could not now raise them in a new post-conviction proceeding in Pennsylvania.[9] Since petitioner has no current remedy available in Pennsylvania by which to raise these theories, the requirements of the exhaustion doctrine have been satisfied. *Fay v. Noia,* 372 U.S. 391, 434–35, 83 S.Ct.

822, 846–47, 9 L.Ed.2d 837, 866 (1963); 28 U.S.C. § 2254(b)(1970).

■ Finally, the Commonwealth contends that petitioner has waived any objection he might have had to trial counsel's opening statement and advice to petitioner not to testify and that to permit petitioner to raise these issues now is to countenance abuse of the writ of habeas corpus. We disagree. Petitioner clearly did not waive any objection to these aspects of trial counsel's representation when he originally filed his petition for habeas corpus in the district court. His *pro se* petition raised the general issue of trial counsel's incompetence.[10] Petition for Habeas Corpus at 3, app. at 5a. In addition, there is no indication in the record that petitioner made a deliberate tactical decision to forego raising these specific claims of incompetence. *Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963). However, the Commonwealth argues that petitioner deliberately abused the writ of habeas corpus by intentionally withholding these alleged instances of incompetent representation until after the district court had ruled against granting the petition in its first opinion following our remand. The basis of the Commonwealth's argument is a statement made at the first hearing by Johnson's habeas corpus counsel, in which he said that petitioner was not challenging aspects of

---

8. Petition Under Post Conviction Hearing Act at 2, app. at 489a; Transcript of Hearing on Post Conviction Hearing Act Petition, May 27, 1970, at 7, app. at 520a (when asked the specific instances of inadequate representation, petitioner responded, "All of it—his handling of the case.").

In *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), the Supreme Court held that a petitioner who had challenged his indictment in state court as solely violative of state law and then had petitioned for habeas corpus in federal court alleging that the indictment violated the equal protection clause had not exhausted his state remedies. The Court found *Picard* different from those cases, like the instant case, "in which 'the ultimate question for disposition,' . . . will be the same despite variations in the legal theory *or factual allegations urged in its support.*" *Id.* at 277, 92 S.Ct. at 513, 30 L.Ed.2d at 445 (emphasis added).

9. *See Commonwealth v. Wilson,* 452 Pa. 376, 305 A.2d 9 (1973); *Commonwealth v. Orr,* 450 Pa. 632, 301 A.2d 608 (1973). In Pennsylvania, once the Supreme Court of the Commonwealth has ruled on the merits of a defendant's ineffective assistance of counsel claim and denied the claim, the defendant cannot advance new theories or arguments in support of his claim of incompetence in a subsequent proceeding under Pennsylvania's Post Conviction Hearing Act. *Commonwealth v. Wilson, supra.*

10. In earlier opinions, we have emphasized that a *pro se* petition for habeas corpus should be read with a measure of tolerance. *United States ex rel. Montgomery v. Brierley,* 414 F.2d 552, 555 (3d Cir. 1969), *cert. denied,* 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970); *Wade v. Yeager,* 377 F.2d 841, 846 (3d Cir. 1967), *cert. denied,* 393 U.S. 893, 89 S.Ct. 218, 21 L.Ed.2d 173 (1968).

trial counsel's representation other than his failure to locate Davis.[11] While in light of petitioner's later claims this statement now appears to be too narrow, the district court did not abuse its discretion in granting a rehearing to permit Johnson to raise counsel's opening statement and advice to petitioner not to testify in support of his ineffective assistance of counsel claim. Certainly, the court could reasonably have found that counsel's narrow reading of the mandate was a justifiable reason for not pursuing these additional aspects of trial counsel's representation at the first hearing.

## III

 We turn to petitioner's contention that he was denied effective assistance of counsel. The burden is on petitioner to demonstrate that the representation provided him by counsel was constitutionally inadequate. *United States v. Hines,* 470 F.2d 225, 231 (3d Cir. 1972); *United States v. Varga,* 449 F.2d 1280, 1281 (3d Cir. 1971). We enunciated the standard for judging the adequacy of counsel's assistance in *Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970): "[T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place." While we can state this general standard with ease, it is clear from our decisions that it is the particular facts of each case which determine whether the attorney in question has provided the constitutionally required effective assistance of counsel. *See, e. g., United States v. Rispo,* 470 F.2d 1099 (3d Cir. 1973); *United States v. Hines, supra; United States v. Varga, supra; United States v. Moore, supra.* See *also King v. Beto,* 429 F.2d 221, 222 n.1 (5th Cir. 1970).[12]

### A

The district court found that the "principal" and "probably the only reason" for trial counsel's advising petitioner not to testify was counsel's fear that if petitioner took the stand, his prior criminal record would be revealed to the jury.[13] The court held that this advice was incompetent because, at the time of trial, counsel was unfamiliar with Johnson's actual criminal record and misunderstood the relevant law on the admissibility of a defendant's prior criminal record. In the court's opinion, trial counsel simply failed "to appreciate the choice to be made." Petitioner was prejudiced by this advice, held the district court, because the Commonwealth's otherwise weak case was strengthened by the absence of any defense witnesses.

 There is no support in the record for the district court's finding that trial counsel was not familiar with the relevant aspects

---

11. The colloquy in question is as follows:

 The Court: [Counsel], is there any assertion being made of inadequate representation on the basis of anything which happened or did not happen at trial other than this business about Willie Davis and the possible question of the police concealing his whereabouts?

 In short, is there any assertion that the defendant should have been called as a witness or that anybody should have been called as a witness?

 [Counsel]: No, there is not.

 App. at 118a.

12. Because the question whether trial counsel's assistance was constitutionally adequate is a mixed question of law and fact, we are not bound by the clearly erroneous rule and we may freely review the district court's conclusion. *See Johnson v. Salisbury,* 448 F.2d 374, 377 (6th Cir. 1971), *cert. denied,* 405 U.S. 928,

92 S.Ct. 979, 30 L.Ed.2d 801 (1972); *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 267 (3d Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2589, at 753–59 (1971).

13. Trial counsel testified that his advice to petitioner not to testify was also based on his belief that Johnson would not be a good witness. App. at 162a, 167a. There was conflicting testimony on whether this was in fact a reason for counsel's advice. However, the district court made a credibility determination, which we will not disturb, that the principal and probably the only reason for counsel's advice was his concern that Johnson's prior criminal record might be disclosed. Thus, our discussion is confined to the reasonableness of trial counsel's concern that Johnson's criminal record might be revealed to the jury.

of Johnson's prior criminal record. Trial counsel testified at the second evidentiary hearing, and his testimony was uncontroverted, that prior to trial he had in his possession and had examined a record of petitioner's prior offenses similar to the official police extract of record, or "rap sheet," on Johnson. App. at 147a, 154a–55a. Counsel testified that he was particularly concerned that the jury might learn of Johnson's 1956 conviction for burglary, 1961 and 1962 convictions for aggravated assault and battery and 1962 arrest on charges of assault with intent to kill.[14]

The district court's finding that trial counsel misunderstood the applicable Pennsylvania law governing the admissibility of a defendant's prior criminal record is also unsupported by the record. While trial counsel was never asked how the jury might learn of the 1956 burglary conviction,[15] it is clear under Pennsylvania law that since burglary is a felony, the conviction would have been admissible to impeach petitioner. See Commonwealth v. Bighum, 452 Pa. 554, 307 A.2d 255 (1973); Commonwealth v. Kostan, 349 Pa. 560, 37 A.2d 606 (1944); Note, Use of Prior Crimes to Affect Credibility and Penalty in Pennsylvania, 113 U.Pa.L.Rev. 382, 385 (1965). The district court recognized that the burglary conviction could come into evidence but discounted it because the trial judge might have excluded it due to its age and because even if the jury had been aware of the conviction, it would not have been dam-

aging to petitioner's case. However, the jurisprudence of effective assistance of counsel cases cautions against this kind of second-guessing of an attorney's trial decisions. Moore v. United States, 432 F.2d 730, 736–37 (3d Cir. 1970).[16] Under Pennsylvania law, a trial judge has discretion whether to exclude a conviction because of its age, see Commonwealth v. Bighum, supra, and, therefore, it was not unreasonable or incompetent for trial counsel to conclude that the trial court might permit admission of this conviction. United States v. Rispo, 470 F.2d 1099, 1103 (3d Cir. 1973). At the time of trial the burglary conviction was only 11 years old. In addition, the murder was alleged to have occurred during the course of robbery. Further, we cannot say that the trial counsel's assessment of the impact of the burglary conviction on the jury was unreasonable.

In addition to the·burglary conviction, trial counsel feared disclosure of the 1961 and 1962 convictions for assault and battery. When asked how he envisioned that these convictions, which were misdemeanors not in the nature of crimen falsi, might be disclosed, counsel responded that the convictions would be admissible if Johnson, on cross-examination, had voluntarily placed his character in issue. We have reprinted in the margin and in its entirety trial counsel's explanation of how these convictions might have been revealed to the jury.[17] Counsel's explanation is a correct statement of Pennsylvania law. See Com-

---

14. While counsel did admit that at the time of trial he did not know whether Johnson's 1962 arrest on charges of assault with intent to kill had resulted in a conviction, app. at 158a, this fact is irrelevant given the fact that counsel feared that petitioner might voluntarily place his character in issue. See p. 176 infra.

15. Indeed, trial counsel was never asked to explain Pennsylvania law on the admissibility of a defendant's prior criminal record.

16. As the Moore court so aptly stated:
The artistry of the advocate is difficult to judge retrospectively because the elements influencing judgment usually cannot be captured on the record. The kaleidoscopic range of possibilities often seems limitless, and it is proverbial that the finest ideas emerge on the way back from the courthouse. The advo-

cate's work, therefore, is not readily capable of later audit like a bookkeeper's.
432 F.2d at 736–37.

17. Trial counsel explained as follows:
[THE COMMONWEALTH]: Now in what manner did you envision that these misdemeanor offenses might be used against the defendant?
[TRIAL COUNSEL]: Well, once the jury gets into its mind—this is my opinion, of course—that this fellow is no innocent angel—
THE COURT: But how does that get before the jury was the question.
[TRIAL COUNSEL]: I am expressing myself as to what I thought would happen if he took the stand. I think that is the question. Isn't that the question?

*monwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973); *Commonwealth v. Kostan,* 349 Pa. 560, 37 A.2d 606 (1944); Note, *Use of Prior Crimes to Affect Credibility and Penalty in Pennsylvania,* 113 U.Pa.L.Rev. 382, 385 (1965). Indeed, although trial counsel was not asked this, if Johnson had placed his character in issue, he could even have been cross-examined as to his 1962 arrest on charges of assault with intent to kill. *See Commonwealth v. Smith,* 432 Pa. 517, 248 A.2d 24 (1968); *Commonwealth v. Petrulli,* 182 Pa.Super. 625, 128 A.2d 108 (1956).

■ The district court, during the course of the second hearing and in its opinion, stated that trial counsel's concern that these misdemeanors might be disclosed if petitioner placed his character in issue would have been obviated by careful pre-

THE COURT: Yes, what did you think would happen if he took the stand?
[TRIAL COUNSEL]: Because in all likelihood from my experience he would in the course of cross examination make a statement to the effect that he is of good character, that he has been working for Horn & Hardart for some ten years, and he is a good man, and his superintendent or supervisor will say that he is a good man, and statements of that sort, because I have seen this happen countless times. People don't like to admit that they are bad characters.
THE COURT: Are you suggesting that you planned to put on evidence of the defendant's reputation or character evidence?
[TRIAL COUNSEL]: No, no, no. I wouldn't put on no character evidence, but statements from the defendant himself would allow the District Attorney—
THE COURT: Weren't you the one asking the questions on direct?
[TRIAL COUNSEL]: I am not talking about direct. I am talking about what would happen on cross.
THE COURT: Is it your suggestion that by asking on cross examination questions relating to the defendant's character that the District Attorney could thereafter introduce criminal records because the defendant's character could be put in issue?
[TRIAL COUNSEL]: I would never ask about his character.
THE COURT: I understand that, but is it your understanding of the law that the District Attorney on cross examination could inject that issue and thereafter get in evidence of a criminal record which would otherwise not be admissible?

trial counselling of Johnson to ensure that he would not volunteer statements about his character. This might certainly have been the best course to follow, although even had petitioner been warned, he might nevertheless have inadvertently made assertions of his good character. But we do not demand that trial counsel make the "right" or even the best decision at every Rubicon encountered during a trial. *United States v. Moore,* 432 F.2d 730, 736 (3d Cir. 1970). Rather, we require that counsel make reasonably informed decisions. Based on his knowledge of Pennsylvania law, see *supra,* his realization that petitioner would be subject to skillful cross-examination, app. at 172a, his evaluation of Johnson's testimonial strengths and weaknesses derived from his numerous interviews with

[TRIAL COUNSEL]: He could inject it if the defendant himself testified that he was of good character.
THE COURT: If the defendant testified on direct examination; isn't that true?
[TRIAL COUNSEL]: Well, even on cross examination, if he voluntarily made a—that is my interpretation—if he voluntarily made a statement that he was of good character, that can be impugned by his criminal record by the District Attorney's office, if he voluntarily did so, and I envisioned that he might after conversations with him.
THE COURT: And how do you think it could be impeached by this type of criminal record?
[TRIAL COUNSEL]: Well, if the District Attorney would ask the defendant about these crimes, naturally he would have to admit that he was arrested, and so forth.
THE COURT: Of course.
[TRIAL COUNSEL]: And the jury would hear it, and I think that would make a very bad impression on the jury.
THE COURT: I understand your position.
[THE COMMONWEALTH]: In other words, are you saying that in your experience with other defendants and also talking with this defendant that you believed there was a substantial risk that even though not directly asked about his character, the defendant in protesting his innocence would get carried away and say something which would put his character into evidence?
[TRIAL COUNSEL]: That is correct.
[THE COMMONWEALTH]: And that that would open the door for bringing out his full criminal record, including these serious misdemeanors?
[TRIAL COUNSEL]: That is correct.

petitioner, *id.* at 168a–72a, his opinion as to the effect the recent assault and battery convictions would have on a jury in a capital case, and his appraisal of the strength of the government's case, *id.* at 164a, trial counsel made a decision that his best chances for success would be not to risk disclosure of petitioner's criminal record. Rather, counsel determined to expose the weaknesses in the Commonwealth's admittedly weak case through cross-examination and thereby to raise a reasonable doubt in the jurors' minds.[18] That decision was well within the range of normal competency by which we judge the effectiveness of an attorney's assistance. *United States v. Rispo,* 470 F.2d 1099, 1103 (3d Cir. 1973).

## B

The district court also found trial counsel's representation inadequate because he had intimated in his opening statement that he would produce witnesses to prove that Johnson was at home at the time of the murder, see note 5 *supra,* when in fact counsel had already decided not to put petitioner on the stand and could not locate the only other possible witness, Willie Davis, who could have placed Johnson in his room at the time of the murder. Counsel could not remember why he had made this statement. App. at 163a. In the court's view, a lawyer of normal competence would not have made this statement without somehow fulfilling his promise to the jury.

■ Under the facts of this case, we agree that a lawyer of normal competence would have recognized the danger of such a promise knowing that no alibi witness would be available and that the petitioner would not testify.[19] However, our inquiry does not stop at this point. Petitioner also

has the burden of proving that he was prejudiced by the variance between counsel's opening statement and his conduct of the trial. *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3d Cir. 1970); *see United States v. Rispo,* 470 F.2d 1099, 1103 (3d Cir. 1973). In our view, petitioner has not shown that his case was prejudiced by counsel's opening statement.

Trial counsel's remark was brief and only one portion of a longer opening address. The remark was followed by three full days of extensive testimony and cross-examination and lengthy closing arguments and instructions. This statement by counsel was never adverted to again by either trial counsel or the Commonwealth. Further, the court instructed the jury not to draw any adverse inferences from petitioner's decision not to testify. App. at 415a. Thus, while the comment was unfortunate, it was harmless beyond a reasonable doubt.

## C

■ Finally, the court held that trial counsel's representation was "incompetent" with regard to his failure to locate Willie Davis. In its first opinion following remand, the court had stated that trial counsel's efforts to locate Davis were inadequate but that Johnson had not been prejudiced. In its second opinion, the court found that petitioner had been prejudiced by Davis's failure to testify because had Davis testified, trial counsel's promise to the jury in his opening remarks would have been fulfilled. We disagree with the district court for two reasons: first, in our view trial counsel's efforts to locate Davis were not incompetent and, alternatively, petitioner has failed to show that he was prejudiced by the failure to locate Davis.

---

18. Trial counsel explained:

> The thing that I emphasized most was the fact that I wanted him to be given every possible chance, and the best chance he would have would be to leave the entire burden of proving the case on the Commonwealth rather than let him explain himself on the witness stand, particularly in view of the fact that he had no witnesses to corroborate his story. I made that very clear, and I think he understood it.

App. at 164a.

19. We do not intimate, however, that a lawyer of normal competence could not promise to produce evidence in his opening statement and then change his mind during the course of the trial and not produce the promised evidence. By trial counsel's own admission, app. at 163a, this did not occur in the instant case.

In most cases in which courts have found a trial counsel's representation inadequate because of his failure to locate a potential alibi witness, no more than minimal efforts have been made to locate the witness.[20] This is not the situation in the case at bar. Trial counsel visited Davis's apartment and neighborhood a "half dozen" times.[21] He questioned the landlord, the neighbors, and the local bartender, all to no avail. These people did not know to where Davis had moved. App. 69a–70a. Counsel even checked the unemployment office. He repeatedly asked Johnson to help him locate Davis but Johnson could give him no further information.

The district court suggested that trial counsel should have hired a private investigator. Counsel testified that he did not seek authority to hire an investigator because counsel did not believe an investigator could do more than he himself had done. Counsel was white and the neighborhood was black and perhaps a better course might have been to hire a black investigator. However, trial counsel was not incompetent not to do so. Petitioner's wife, who was black, made repeated efforts to locate Davis and was also unsuccessful.[22]

In the district court's view, counsel should have issued a subpoena, sought a bench warrant or enlisted the aid of police or the district attorney's office to locate Davis. However, counsel testified, and quite correctly, that he could not have obtained either a subpoena or a bench warrant because he did not know where Davis was living. To have asked for a subpoena or a bench warrant would have been a meaningless gesture. *See United States ex rel. Martin v. Brierley,* 464 F.2d 529, 530 (3d Cir. 1972), *cert. denied,* 410 U.S. 943, 93 S.Ct. 1379, 35 L.Ed.2d 610 (1973). Viewed

with the facts gained through hindsight, counsel probably would have discovered Davis's whereabouts had he asked the police or district attorney. But at the time, it would have been naive of trial counsel to suppose that these authorities would aid him in his efforts to find a potential alibi witness.

Additionally, petitioner has not proved that Davis's alleged testimony would have been helpful. *See United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3d Cir. 1970). Even if Davis had corroborated petitioner's version of the events of the day of the murder, there was still a time gap of three crucial hours for which petitioner could not account. For all we know, Davis could have been sleeping between 2:00 and 5:00 p. m. and would never have heard petitioner leave his room. More importantly, the police had a statement from Davis stating that he had not been with Johnson on the day of the murder. While trial counsel might have been able to cast doubt on the conditions under which the statement had been taken, it nevertheless would have severely damaged the probative force of Davis's hoped-for testimony. In its second opinion following remand, the district court held that petitioner had been prejudiced because "had an adequate investigation been made, the glaring discrepancy between counsel's opening statement and his subsequent conduct of trial would not have occurred." We have stated above, however, that petitioner was not prejudiced by the variance between counsel's opening statement and his conduct of the trial.

### IV

Accordingly, the order of the district court will be reversed and the case remanded with directions to deny Johnson's petition for a writ of habeas corpus.

---

**20.** *See, e. g., Beasley v. United States,* 491 F.2d 687 (6th Cir. 1974); *Johns v. Perini,* 462 F.2d 1308 (6th Cir.), *cert. denied,* 409 U.S. 1049, 93 S.Ct. 519, 34 L.Ed.2d 501 (1972); *Chalk v. Beto,* 429 F.2d 225 (5th Cir. 1970).

**21.** Petitioner asserts that the district court made a credibility determination that trial counsel's testimony as to his repeated efforts to locate Davis was untruthful. Brief for Appel-

lee at 53–54. We find no support for this contention in the record or in the district court's opinion. See app. at 82a, 112a–13a, 133a–34a.

**22.** We also note that at the time of the state evidentiary hearing, only one year after the trial in question, the police attempted to locate Davis but were unsuccessful.