McCORD, Chief Judge.
This is an appeal from an order denying appellant’s motion to vacate and set aside the verdict, judgment and sentence filed under Rule of Criminal Procedure 3.850. His motion contends that he was denied effective assistance of counsel. The trial court denied appellant’s motion without an evidentiary hearing, and appellant contends such was error — that he was entitled to an evidentiary hearing. We agree and reverse.
Appellant, represented by court appointed counsel, was previously convicted of robbery, and upon appeal to this Court, the conviction was affirmed, Robinson v. State, 334 So.2d 611 (Fla. 1 DCA 1976). The af-firmance was without opinion, but the record on that appeal shows the facts to have been as follows:
Clarence M. Barnett, a 22 year old cab driver with the Safety Cab Company in Jacksonville, Florida, testified that he was robbed at gun-point by a passenger on February 8, 1975. Barnett identified appellant as the passenger.
Barnett- stated that he was driving his cab near a dog track in Jacksonville when he picked up one passenger and was then flagged down by appellant Robinson. Barnett stated that, after he dropped off his first passenger, he asked appellant where he wanted to go to which he stated appellant replied “out Blanding Boulevard.” Barnett stated that he drove some distance and then again asked appellant where he wanted to go, and appellant then named the VFW Hall as his destination. Barnett stated that he did not know the location of the VFW Hall and called his dispatcher -for directions and to inquire as to the amount of the fare. Barnett stated that the dispatcher could not give him directions to the VFW Hall and that appellant directed him. The cab driver testified that appellant told him he lost $700 or $800 at the dog track that night and was not sure he could pay the entire fare. The driver stated that he told appellant he would need some of the money and that appellant gave him approximately $4 which was the change in appellant’s pocket.
Following these events, the cab driver claimed appellant turned to him and said, “Hey, look,” and that appellant had a gun pointed at his side. The cab driver stated he replied, “Don’t kill me, I’ll give you anything just don’t kill me.” The driver stated he continued driving at approximately 45 miles an hour for about two miles further, crossing over into Clay County, when appellant then said, “Give me your money,” and the cab driver stated that he gave appellant two $20 and two $5 bills. The cab driver stated that after he drove a couple of more miles, appellant said, “Pull over right here, I’m going to kill you.” Barnett stated that he then slowed the cab down and pulled over to the shoulder of the road at which point he reached for the gun, a struggle ensued, and the gun went off firing a bullet through the ceiling of the cab. He said he hit appellant in the face with his elbow, opened the door and pushed him out of the cab. Barnett stated that appellant put one hand in his pocket, then just stood there next to the cab while Barnett drove away. Barnett drove around the block, called his dispatcher, and flagged down a police officer.
Deputy Sheriff Robert Alfred testified that he happened to be driving in that area at about 11:30 p. m. on the night of February 8, 1975, when he noticed a taxi cab’s inside light on and the driver motioning that he would like to talk to him. Alfred walked to the cab and talked with Barnett who related the events to which he testified in court. Deputy Alfred found a two shot .22 caliber derringer on the seat of the taxi cab, which was introduced into evidence. Deputy Alfred radioed for another officer, who quickly arrived on the scene, and Deputy Alfred then proceeded to look *938 for the subject described by Barnett. Deputy Alfred saw a subject coming out of some woods (bushes) who met the description given by the cab driver, which person was appellant, and proceeded to question him. Deputy Alfred described appellant’s condition at that time as: “He has lost one shoe, he was wet, muddy and had been drinking.” This officer agreed during his testimony that appellant was quiet, passive and cooperative. This officer located appellant approximately 200-250 yards from the place he met the taxi cab driver. Immediately upon approaching appellant, appellant gave the following information to Deputy Alfred: “The information that he give me, that he had caught a cab in Jacksonville, and advised the cab driver to bring him to the VFW Club and that the cab driver had pulled a gun on him and took his money. And, he jumped out of the cab and run and the cab driver shot at him.”
Deputy Alfred stated that appellant was frisked at the scene, and a search was conducted of the surrounding area for money and appellant’s shoe, neither of which were found. No further investigation was done on this case following appellant’s arrest.
The State presented the testimony of Deputy Frank Soeffler who explained the State’s theory that the appearance of the metal surrounding the bullet hole in the ceiling of the cab indicated that it came from the direction of the passenger side of the vehicle. No scientific support for that conclusion was presented.
Appellant, testifying in his own behalf at trial, related essentially the same facts which Deputy Alfred stated were related to him by Appellant at the scene on the night in question. Appellant stated that he was a barber by trade, 32 years old and unmarried. He stated that he had taken $176 from his savings account with which to play the dogs that weekend, and went to the McDuff Dog Track on Saturday, February 8, 1975, about 6:30 p. m. and drank vodka and orange juice, consuming about eight drinks, until about 11:00. Appellant stated that he had ten winning tickets on the 11th race, winning over $200. He stated that the security guard near the front of the track told him that he should leave because he was pretty drunk and took appellant to the information booth where a cab was called for him. Appellant stated that the security guard escorted him out to the cab when it arrived and that he got in the front seat and told the driver immediately that he would like to go to the VFW Hall on Blanding. Appellant stated that during the journey he took some money out of his coat pocket and his pants pocket, looked at it, and put all of the money in his pants pocket. Approximately 15 minutes later he asked the driver how much the trip would cost, stating that he believed it would be about $7 because he had made the trip three or four times before having recently joined the VFW Hall. Appellant stated that the driver then turned on the inside light, slowed down, pulled over to the shoulder of the road, at which point appellant then asked again how much he would owe him to which the driver replied, “I want it all.” Appellant testified to these events in further detail stating:
“He said, T want it all.’ I said, ‘What are you talking about?’ He said, ‘Just lay it all in the seat.’ And, that is when he had his left hand over there pointing at me, I couldn’t really see what he had in his hand at the time because it was dark in the cab. So, I said, ‘Well, here you go.’ And, when I took my money out I just threw it down in the seat and I grabbed his hand, we scuffled for a few minutes, and the gun went off down by the floorboard. And, I jumped out of the car and I run behind the cab down the road, about 45, 50 feet. And, there is a field over on the right hand side, I went over there and squatted down in the bushes, full of bushes over there, and he pulled off. And, when he pulled off I come back out in the road, walking up the road it was two cars coming in the same direction that we had been coming from. And, I tried to flag them down and they did not stop. And, another car was coming the other direction, it was a police officer, and he stopped."
*939 Appellant testified further that he lost one of his shoes as he was running from the cab and explained that when the gun went off in the floorboard the bullet must have ricocheted off his shoe exiting through the ceiling of the cab. Appellant said he brought this injury to the attention of the police at the jail the day following his arrest and that he was treated at the hospital on the following Monday.
After an hour and twenty minutes of pondering, the jury announced that it was deadlocked. The trial judge stated to counsel his intention to give the standard charge 2.19 for a deadlocked jury and invited any objection. There was none. After giving the standard charge, the court then made a more “informal” statement asking the jury to try to reach a verdict because, “I don’t think any jury will ever be presented with more of the facts than you have. Some jury will have to decide.” No objection was made by appellant’s counsel to the added “informal” charge.
Appellant’s motion to vacate on this appeal stated specific alleged instances where court appointed trial counsel allegedly “failed to function in a normally-competent manner” as follows:
(1) “He visited the Appellant on only two or three occasions, spanning that period from February 8, 1975, until his trial commenced on April 8, 1975, conferring with him for no longer than a total of thirty (30) minutes.”
(2) “He failed to invoke discovery procedures, and he failed to inspect and evaluate prospective evidence.”
(3) “He failed to inspect the vehicle in which the alleged crime took place to determine the direction of the bullet hole and to substantiate the fact that the bullet had exited the roof of the vehicle via a ricochet,”
(4) “cause an investigation to be made the result of which may have provided important evidence in favor of the Appellant.”
(5) “He failed to interview the security officer at the dog track who would have proven to be an important cooperative witness on behalf of the Appellant both as to the amount of money in his possession at the time of the alleged offense as well as how he happened to enter the vehicle.”
(6) “He failed to investigate the injury of the appellant and interview those persons who gave the Appellant medical attention, which such actions would have substantiated the testimony of the appellant.”
(7) “He failed to otherwise interview prospective witnesses, devote sufficient time to the case, and to subpoena prospective witnesses for the Appellant’s trial.”
The above allegations of appellant’s motions are not refuted by the trial transcript, and we find that, if proved, they make a prima facie case of lack of due process to appellant by denial of effective assistance of counsel. The case must, therefore, be remanded to the trial court for a hearing on appellant’s motion.
As to the standard to be used in determining the question, the Supreme Court in Foxworth v. State, 267 So.2d 647 (Fla.1972), stated that the principles enunciated by Federal District Judge D. L. Middlebrooks in his opinion in Foxworth v. Wainwright, 319 F.Supp. 593 (N.D.Fla.1970), are applicable on this question. We quote as follows a portion of Judge Middlebrooks’ opinion which was quoted with approval by the Supreme Court:
“ ‘Cases in this Circuit challenging the ineffective assistance of counsel are rapidly becoming legion. Following is the gauge by which this Circuit measures the claimed constitutional infraction:
‘ “The generally accepted standard by which to determine whether a defendant has been denied effective assistance of counsel has been set out in Brown v. Beto, 5 Cir., 1967, 377 F.2d 950, 957-958:
‘ “ ‘The actual standard of incompetency applied by the overwhelming majority of courts is stated as follows: Incompetency of counsel such as a denial of due process and effective representation of counsel must be such as to *940 make the trial a farce, sham, or a mockery of justice.’ * * * This court has defined ‘effective counsel’ in terms of a ‘reasonable counsel’ standard: ‘We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not er-rorless counsel, and counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.’ McKenna v. Ellis, 5 Cir., 1960, 280 F.2d 592.” King v. Beto, 429 F.2d 221, p. 225, 5th Cir., 1970. See also Odom v. United States, 377 F.2d 853 (5th Cir. 1967).
‘Even more recently this standard has been explained as follows:
‘ “ * * * In this regard, the standard to be observed is not whether petitioner would have fared better if his counsel had been more experienced, knowledgeable or aggressive, but rather whether the record establishes that he lacked the minimum standards of competence necessary to satisfy petitioner’s constitutional right to counsel. Bruce v. United States, 1967, 126 U.S. App.D.C. 336, 379 F.2d 113. The record does not indicate that counsel’s alleged ineffectiveness reduced the proceedings to a farce and a mockery of justice. * * * Rather, it appears from a reading of the record that despite the short time for preparation counsel for the defense rendered reasonably effective assistance under the circumstances.” Cappetta v. Wainwright, 433 F.2d 1027, p. 1029, 5th Cir., 1970.
‘Having studied the transcript and having measured the performance of petitioner’s counsel in light of the standard as set forth above, this Court finds and concludes that counsel “rendered reasonably effective assistance”; that the legal services accorded petitioner were not so poor that he did not have the opportunity to present his side of the story; and that counsel’s representation of petitioner did not render the trial a “farce or a sham.” Parenthetically it might be added that “the time which counsel spends with an accused is merely one factor to be weighed in evaluating the effectiveness of representation.” O’Neal v. Smith, 431 F.2d 646, p. 648, 5th Cir., 1970. Cappetta, supra. In this regard this Court finds that petitioner was not denied the effective assistance of counsel and concludes that this allegation is without merit.’ (319 F.Supp. 593, pp. 596-597)”
In Hawkins v. State, 184 So.2d 486 (Fla. 1 DCA 1966), this Court said:
“ . . . It is elemental that an indigent’s right to counsel necessarily incorporates the right to effective assistance of counsel and that anything less renders the ensuing trial a farcical and mockery proceeding.”
Reversed and remanded with directions that a hearing be held on appellant’s motion.
SMITH and MELVIN, JJ., concur.