**Billy Myrl CROSS, Jr. v. Don METCALFE, Judge.**

**No. 61600.**

Court of Criminal Appeals of Texas, En Banc.

June 13, 1979.

Roberts, J., dissented and filed opinion in which Phillips, J., joined.

Clinton, J., dissented to the order dismissing and filed opinion.

---

James M. Murphy, Dallas, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

---

### ORDER

DALLY, Judge.

This is an original proceeding in which the petitioner asks this Court to issue a writ of mandamus ordering the Hon. Don Metcalfe, Judge of Criminal District Court No. 2 of Dallas County to hear the petitioner's motion for shock probation under Art. 42.-12, Sec. 3d, V.A.C.C.P.

The petitioner's motion for leave to file his petition for writ of mandamus was improvidently granted, and the motion is hereby dismissed.

It is so ordered.

ROBERTS, Judge, dissenting.

This is an original proceeding in which the petitioner asks this Court to issue a writ of mandamus. It appears that on July 10, 1976, the petitioner committed the offense of aggravated assault, and that he used a deadly weapon (a razor) during the commission of the offense. In 1977, the respondent judge's court convicted the petitioner and sentenced him to three years' confinement. He appealed, and this Court affirmed his conviction. After the mandate of this Court issued, it appears that the petitioner again was taken into custody and delivered to the Texas Department of Corrections, on February 16, 1979. He filed a motion in the trial court requesting that the judge suspend further execution of the sentence and place him on probation, as is authorized by section 3e(a) of the Adult Probation, Parole, and Mandatory Supervision Law (V.A.C. C.P., Article 42.12);[1] in the vernacular, he moved for "shock probation." He also requested a hearing on the motion. The judge has denied the motion without holding a hearing. The petitioner asks this Court to order the judge to hold a hearing, or to consider the merits of the motion for shock probation without holding a hearing. In compliance with a per curiam order of this Court, the respondent judge has filed an answer setting forth his legal reasons for refusing to hold a hearing and for refusing to consider the merits of the motion. His reasons are discussed below.

As amended by the people on November 8, 1977, Article V, section 5 of the Texas Constitution gives this Court the power to issue the writ of mandamus in this kind of criminal law matter. *Houlihan v. State*, 579 S.W.2d 213 (Tex.Cr.App. 1979).

Fewer than 120 days having passed since the execution of the petitioner's sentence actually began on (or about) February 16, 1979, the respondent trial judge's court has jurisdiction to grant shock probation. *Houlihan v. State*, supra.

In his written order denying the petitioner's motion, and in his answer filed in this Court, the respondent judge has stated that his denial of the petitioner's motion for shock probation is required as a matter of law. In his view, the petitioner is not eligible for probation because of section 3f(a)(2) of the Adult Probation, Parole, and Mandatory Supervision Law (V.A.C.C.P., Article 42.12).[2] This section provides that the trial court's power to grant probation, without a jury's recommendation, does not extend to a defendant who used or exhibited a deadly weapon.

The respondent judge's view is faulty, because it does not take into account an important limitation on section 3f. Section 3f was added by 1977 Texas Acts, chapter 347, section 7 of which provides:

"This Act applies only to inmates sentenced to the Texas Department of Corrections for an offense committed on or after the effective date of this Act. Inmates sentenced for an offense commit-

1. "For the purposes of this section, the jurisdiction of the courts in this state in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction of a felony shall continue for 120 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 120 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may, on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if such sentence is otherwise eligible for probation under this article and prior to the execution of such sentence, the defendant had never been incarcerated in a penitentiary serving a sen-

tence for a felony and in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary. Probation may be granted under this section only if the offense for which the defendant was sentenced was an offense other than criminal homicide, rape, or robbery." Added by 1977 Texas Acts, chapter 306, section 1.

2. "(a) The provisions of Sections 3 and 3c of this Article do not apply:

        \*    \*    \*    \*    \*    \*

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during [the] immediate flight therefrom.
   \*  \*  \*"

ted prior to the effective date of this Act are governed by the law existing before the effective date, which is continued in effect for this purpose."

The effective date of the act was August 29, 1977. Because the petitioner has been sentenced to the Texas Department of Corrections for an offense committed before its effective date, section 3f does not make him ineligible for probation.[3]

The only stated reasons for refusing to consider the merits of the petitioner's motion for shock probation were bottomed on the assumption that section 3f applied to the petitioner. This assumption clearly was wrong. This Court cannot be in doubt that it was wrong. The petitioner is entitled to have a decision on the merits of his motion.

The petitioner also has requested that this Court order the respondent judge to conduct a hearing on his motion. The respondent judge has answered that he had no legal duty to hold a hearing, noting that there is no provision for a hearing in section 3e of the Adult Probation, Parole, and Mandatory Supervision Law (V.A.C.C.P., Article 42.12). I agree. As the respondent's answer implies, I do not think that we can infer from the silence of the statute a requirement that a hearing be held on every motion for shock probation. I am reluctant to hold that the Legislature had an intent, which it failed to manifest in the act, that inmates should be transported from the Texas Department of Corrections to the convicting courts for such hearings.

If there were a requirement of such a hearing, it would have to be imposed by some source outside the statute, such as guaranties of the state and federal constitutions. Although constitutional problems may lurk in this area, I cannot say that the constitutional guaranties require a hearing on every motion for shock probation.

Action on a motion for shock probation is taken after the conviction has become final. Punishment has been assessed and sentence has been pronounced.[4] The sentence is fixed. Parts III and IV–A of the recent opinion in *Greenholtz v. Inmates*, —— U.S. ——, —— – ——, 99 S.Ct. 2100, 60 L.Ed.2d 668, 25 Crim.L. 3085, 3087–3088 (1979), make it very doubtful that there are due process rights in the decision of whether to grant shock probation. Yet there are some differences between *Greenholtz* and this case, notably that *Greenholtz* dealt with a decision of the executive branch, while shock probation is a decision of the judicial branch (albeit an administrative one).[5]

Also, the guaranty of due course of law in Article I, section 13, of the Texas Constitution may provide greater protections than those required by the federal constitution. These protections may require notice of the evidence being considered and some opportunity to respond to it, short of a hearing.

But mandamus is a remedy that is appropriate to compel performance of a ministerial, or non-discretionary, act. There being no evidence before the Court to indicate that the respondent judge intends to consider any evidence, or to take any step, that would trigger such procedural questions, I would not hold that the petitioner has shown that a hearing is required. (This is not to say that a trial court may not hold a hearing if he thought it would be helpful. I would only say that a hearing may not be constitutionally mandated in every case, nor is it mandated by the statute.)

I am disturbed by the majority's decision to dismiss the motion. The petitioner has brought us two requests for relief. On one request he has shown that he is entitled to relief. On both requests we have an opportunity to discuss matters on which the

---

**3.** The petitioner presented an argument that the sentences of inmates to whom section 3f *does* apply are nonetheless eligible for shock probation under section 3e. Because the petitioner *is not such an inmate, I do not consider* this issue. In oral argument, the petitioner's counsel said that he was not aware of the limitation on the applicability of section 3f.

**4.** The conviction may even have been affirmed after an appeal to this Court, as we held in *Houlihan v. State*, supra.

**5.** See *Davenport v. State*, 574 S.W.2d 73 (Tex. Cr.App.1978).

bench and bar need guidance. The Court declines to address either request, which seems to me to be an injustice to the petitioner and a disservice to the public.

I dissent.

PHILLIPS, J., joins.

CLINTON, Judge, dissenting to order dismissing.

In accordance with the established rule, four judges voted to grant leave to file petition for writ of mandamus and the cause was submitted on oral argument to the Court en banc. Now without addressing the substantial issues presented, the majority says leave to file was "improvidently granted." To this destruction of the "rule of four," I emphatically dissent.