Ex parte Leonard Ortega DIAZ, Jr.

No. 65162.

Court of Criminal Appeals of Texas, En Banc.

Jan. 28, 1981.

**766**

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an application for post-conviction writ of habeas corpus, pursuant to Article 11.07, V.A.C.C.P., wherein petitioner alleges in his application for writ of habeas corpus that he was denied the effective assistance of counsel at his trial, which resulted in his entering unknowing and involuntary pleas of guilty. The contentions have been reviewed and found to be without merit. Cf. *Cross v. Metcalfe*, Tex.Cr.App., 582 S.W.2d 156.

The application was improvidently set. It should have been denied without written opinion.

The requested relief is denied.

McCORMICK, J., concurs in the result.

ROBERTS, Judge, dissenting.

Judge W. C. Davis's opinion, below, sets out the facts which show that the applicant is entitled to relief. I substantially agree with that opinion and with Judge Clinton's.

I have asked myself how the same court that granted relief in *Ex parte Harris*, 596 S.W.2d 893 (Tex.Cr.App.1980), and *Ex parte Bratchett*, 513 S.W.2d 851 (Tex.Cr.App. 1974), could deny it in this case. The court said that it gave relief to Harris and Bratchett because they had had no real assistance of counsel before they pleaded guilty (and they had not waived such assistance).[1] Diaz had no more help from his cop-out man than Harris and Bratchett had from theirs. The only difference between the cases is that Harris and Bratchett were not given something that they said the

---

1. "A mere, *pro forma* appearance of counsel does not amount to the 'Assistance of counsel' and 'due process of law' that are guarantied by the United States Constitution. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Neither does it afford the 'right of being heard by . . . counsel' guarantied by the Texas Constitution. These constitutional provisions require that counsel render reasonably effective assistance. *Ex parte Gallegos*, 511 S.W.2d 510 (Tex.Cr.App.1974). A guilty plea rendered without the effective assistance of counsel (or a knowing and intelligent waiver of counsel) is not a voluntary and knowledgeable act, and habeas corpus relief will be granted from such a conviction. *Ex parte Bratchett,*

513 S.W.2d 851 (Tex.Cr.App.1974). In *Bratchett*, counsel talked to his client only three times; he did not interview any witnesses or research the law; he (and the prosecutor) told the defendant that pending charges in another county would be dismissed, although they were not; he advised his client to plead guilty for a maximum sentence; and he sent his partner to appear at the trial. We held that he did not render reasonably effective assistance and that the guilty plea was not voluntary and knowledgeable. Counsel in this case was no more (and possibly less) effective than Bratchett's. The convictions cannot stand constitutional scrutiny." *Ex parte Harris*, 596 S.W.2d 893, 894–895 (Tex.Cr.App.1980) (footnotes omitted).

State had promised them,[2] while Diaz (without the assistance of counsel) apparently got the bargain he had worked out with the State. If today's result does turn on that distinction, the court has rejected its own constitutional teachings in favor of a new rule: The sham services of a cop-out attorney are acceptable so long as the State lives up to the bargain it struck with the uncounseled defendant.

The alternative is to believe that, although the principles of *Ex parte Harris* and *Ex parte Bratchett* remain intact, the court will not apply them to every habeas corpus applicant who proves that he is deprived of his liberty in violation of them. The former alternative would mean that the court had turned its back on the constitutional guaranties of the assistance of counsel; the latter, that it has closed the door on the Great Writ in a way that denies equal protection of law. It is no wonder that the court shies away from explaining which alternative it has chosen. I can not accept either of them. I dissent.

TEAGUE, J., joins in this dissent.

W. C. DAVIS, Judge, dissenting.

Despite the "extensive treatment" of the petitioner's allegations in the majority opinion, I feel obliged to elaborate further in order to register my dissent to the disposition of this case.

On February 28, 1975, petitioner was convicted for aggravated robbery in Cause No. B–8181[1] and aggravated assault in Cause No. A07816. Petitioner was sentenced the same day to 15 years confinement and ten years confinement respectively. In both of these causes the petitioner entered pleas of guilty after waiving the right to a jury

trial, the ten day period for preparation by appointed counsel and the right to confront and cross-examine witnesses. No appeals were taken from these convictions.

The petitioner alleges in his application for writ of habeas corpus that he was denied the effective assistance of counsel at his trial, which resulted in the petitioner entering unknowing and involuntary pleas of guilty. Petitioner further contends that his pleas were involuntary because he did not receive adequate notice of the charges to which he was pleading.[2] A hearing was held on petitioner's application on June 8, 1979, wherein the petitioner testified that on the day of his trial the court clerk asked him if he had a lawyer. The petitioner replied that he did not, and the clerk gave him a paper to sign. Fifteen minutes later, the petitioner's newly appointed attorney materialized at the courthouse. The petitioner stated that he spoke with his attorney for fifteen minutes prior to the trial.

The attorney appointed to represent the petitioner at his trial on these two felony offenses also testified at the habeas corpus hearing. Concerning the events that transpired the day of the trial, the attorney testified,

"I will tell you that I asked him as I have done on every one of my previous appointments and since appointments I always ask the person, did you do it? Are you guilty of the crimes that you have been charged with? I did in this case and Mr. Diaz told me he was guilty and that he did not want a jury trial and that he wanted to plead guilty. *In fact, that is the reason for my appointment and the reason I came over because I was told that the man was there at the courtroom*

---

**2.** Harris said that the State had promised him a ten year sentence rather than life; there was no finding of whether that was true, because the case did not turn on that point—at least until today. Bratchett was promised that another charge would be dismissed.

**1.** The petitioner waived indictment in this cause.

**2.** With regard to the aggravated robbery charge, petitioner contends that his counsel

was ineffective for failing to advise him that intent to permanently deprive the owner of the property was an essential element of the offense. The petitioner contends that he did not intend to permanently deprive the owner of his taxi. Petitioner testified that he abandoned the taxi four blocks from the place it was taken. The State did not dispute the location of the taxi, but intimated that the taxi was abandoned when petitioner wrecked it.

*ready to plead and it was going to be done right then.* Not only that, I asked him what kind of deal had he made. I don't know if I used the word deal but what had they said they would recommend. It could have been language such as that. He tells me the recommendation and it turns out here when I reviewed the papers ten years on one offense and fifteen years on the other to run concurrent. I asked him whether he was satisfied or not and whether that is what he wanted to do and he told me that it was. So the papers were signed and we appeared before Judge Milburn...

\*   \*   \*   \*   \*   \*

Q. [By petitioner's counsel]: Can you tell me, sir, about how long probably you were here at the courthouse on this particular plea of guilty, if you recall?

A. Yes, I do recall and I would say somewhere around thirty minutes total. I don't know if I talked to Mr. Diaz ten or twenty minutes or fifteen but at any rate *the total time was probably around thirty minutes, from the time I arrived until the time Judge Milburn had completed accepting the plea.*

Q. *Did you conduct any independent investigation concerning the facts of the case?*

A. *I did not because the man indicated he did not want a jury trial.*

Q. Did you conduct any independent legal research concerning the elements of the crime in which he was charged?

A. Obviously not because everything transpired in the courtroom from the time I was appointed until the time the plea was over. I had no opportunity to report back to my office and research all the law on the various crimes he was charged with. He told me he had committed them.

Q. Did you read the District Attorney's file as to what the acts were or anything?

A. No, but I am not aware of the fact that the District Attorney would have permitted me to read his file.

\*   \*   \*   \*   \*   \*

Q. ... Why did you not advise Mr. Diaz of the consequences of his plea with particular regard to the essential elements with regard to the complaint of the indictment as to the offenses charged?

A. Why I did not do that?

Q. Yes, sir.

A. Because the man told me in response to my question that he was guilty and he wanted to plead guilty and that he did not want a jury trial. The only purpose of explaining defenses to the man if he wanted a jury trial then it *would be* necessary not to have any plea that day for me to go back and research a bunch of law, with the idea of preparing to defend his case in a jury trial... *You know there might be a number of defenses but it would take a study of the law and all that and I didn't come over with the statute book prepared to explain however many numerous defenses there are to the man.* I took him at his word when he told me he wanted to plead guilty and accept the recommendation of the District Attorney's Office and go off to the penitentiary and start serving his time.

Q. Did you or did you not advise him that the indictment had to be on file two days prior to the arraignment and also that he was entitled to ten days for trial preparation following court appointment.

A. No, sir, I did not.

Q. For what reason?

A. If he had indicated to me that he was interested in defending the case I would have started advising him in accordance with what his rights were." (Emphasis added)

On cross-examination by the prosecutor, the attorney stated:

"Whenever I have had these appointments where the person has already indicated that he wants to plead and he is already there at the courtroom and they call me to come over as quick as you can, everybody is waiting, the Judge, the District Attorney and the prisoner. I have come on over and the Clerk will be there with the papers and the man will be there and it is at one of the counsel tables in

the courtroom and I will sit there with the Clerk's representative or herself and everybody that is necessary to sign the paper will do it in the presence of each other . . .

Q. Did you go over this [waiver of ten day period of preparation] with the defendant?

A. I did go over this and it is obviously not a twenty minute function but he was advised that he was waiving a jury trial and that he was waiving the ten day period for trial . . . Without getting into hearsay that is what I was told that I was appointed and that the man wanted to plead and wanted to do it right then, get over here as quick as you can, everybody is waiting."

The court has entered findings of fact and conclusions of law concerning this hearing. The trial court merely concluded that:

"1. The trial court substantially complied with the requirements of Article 26.13 C.C.P.; it does not appear the defendant was mislead or harmed by the admonishment of the court.

2. If the defendant in fact did not understand he was waiving certain of his constitutional rights, he misled the trial court.

3. If all the defendant's testimony is accepted at face value, the ends of justice would be served by granting a new trial."

The adequacy of an attorney's representation is gauged by the "reasonably effective assistance of counsel" standard. See *Ex Parte Duffy*, 607 S.W.2d 507 (1980). The belated appointment of counsel, standing alone, does not demonstrate that the accused was denied the effective assistance of counsel. *Thomas v. State*, 530 S.W.2d 834 (Tex.Cr.App. 1975); *Ellingsworth v. State*, 487 S.W.2d 108 (Tex.Cr.App. 1972). See Article 26.04, Vernon's Ann.C.C.P. However, in the case presently before this court, the attorney was appointed thirty minutes before the proceedings were concluded. Counsel in no way prepared for the trial, nor did he offer any advice to the

petitioner or inform him of the nature of the charges for which he stood accused.

In *Brooks v. State, of Texas*, 381 F.2d 619 (5th Cir. 1967), the Fifth Circuit Court of Appeals stated:

"An indigent defendant is entitled to the effective assistance of counsel. Any experienced trial lawyer knows that a purported trial without adequate preparation amounts to no trial at all." (Footnote omitted)

The Court also quoted the rule it had adopted from *Willis v. Hunter*, 166 F.2d 721 (10th Cir.):

"We think that the right to the effective assistance of counsel contemplated the guiding hand of an able and responsible lawyer, devoted solely to the interest of his client; who has ample opportunity to acquaint himself with the law and facts of the case, and is afforded an opportunity to present them to a court or jury in their most favorable light."

See also *King v. Beto*, 305 F.Supp. 636 (5th Cir. 1969), affirmed 5th Cir., 429 F.2d 221.

The record supports the petitioner's allegations that he was denied the effective assistance of counsel. Further, the failure of appointed counsel to inform the petitioner of the elements of the offenses with which he was charged rendered petitioner's pleas of guilty involuntary, and thus, the judgments of conviction were entered without due process of law. See *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). See also *Ex Parte Gallegos*, 511 S.W.2d 510 (Tex.Cr.App. 1974).

I do not contend that in all cases where an attorney was appointed to represent an accused on the same day of the trial or where the time of consultation of an accused with appointed counsel was equally as brief as it was in this case, that the accused would have proven that he was denied his constitutional right to the effective assistance of counsel. I merely would hold that in light of the record before us, which has so inescapably presented the issue, the petitioner has demonstrated that he was denied the effective assistance of counsel.

To the denial of the relief requested by the petitioner, I respectfully dissent.

TEAGUE, J., joins this dissent.

CLINTON, Judge, dissenting.

Whatever the merits on this application for postconviction writ of habeas corpus—and, as my Brother W. C. Davis points out, there are plenty—the application was not "improvidently set."

This application was set for submission July 16, 1980, hard on the heels of such relief-granting opinions handed down January 8, 1980 in *Ex parte Morse*, 591 S.W.2d 904 (Tex.Cr.App. 1980), and April 9, 1980 in *Ex parte Lewis Kennedy Harris*, 596 S.W.2d 893 (Tex.Cr.App. 1980)—each one, it is important to notice, rendered en banc unanimously by the judges who participated. Obviously, we aimed at the compliant attorney with the hope of hitting the "cop-out man."

The image of assistance of counsel in this cause is but a mirror of the unconstitutional aspects revealed in *Morse* and *Harris*, supra. So, at least four members of the Court voted to direct that the cause be docketed and heard as though originally presented in accordance with the custom and practice that began shortly after the writer commenced his term, and pursuant to Article 11.07, § 3,[1] V.A.C.C.P. There was nothing "improvident" in my vote to examine the facts of this cause in the light of *Morse* and *Harris*, so recently decided, or of the principles implicated in *Ex parte Duffy*, 607 S.W.2d 507, 516, 517, 518 (Tex.Cr.App. 1980), contemporaneously submitted to the Court En Banc on briefs and oral argument June 18, 1980.

According to Article 11.07, § 3, supra, after the cause is docketed and heard, "the court shall enter its judgment remanding the petitioner to custody or ordering his release, as the law and facts may justify." The majority does that in its own way, but in the doing it takes a swipe at those of us who deliberatively exercised our judgment in directing the cause be set for review. Troubled by both actions, I must dissent.

TEAGUE, J., joins.

TEAGUE, Judge, dissenting.

A Majority of this Court in ruling that this cause was improvidently set and holding that the application should have denied without written opinion misses, in my opinion, a golden opportunity to bury, once and for all, the "Cop-out man," the "expeditor," and the "Warm body attorney," who, for all practical and Constitutional purposes, does not, in my opinion meet the requirements of the Sixth Amendment to the Constitution of the United States nor Section 10, Article I, of our Constitution. The right to counsel means, to me, more than just having a warm body, whatever he be denominated, standing by some accused who enters a plea of guilty or nolo contendere in a court of law. A conviction obtained without an accused having counsel is, of course, void, unless it is affirmatively shown that the accused waived counsel. An accused, represented by nothing more than a "warm body," in my view, has not been validly convicted.

However, I do not quarrel with the disposition of a criminal cause, by agreement of the parties, in the minimum amount of time. Shortness of time is not synonymous with ineffective assistance of counsel, but it most assuredly can be in my opinion, if the court-appointed attorney is nothing more than a "stand-in warm body," used solely to put the seal of approval to the fact that the records will show in the future the accused was represented by an attorney when he entered his plea. It is mandatory in my view that counsel, before discussing the dis-

---

1. Section 3 is silent as to the vote needed to direct the cause be docketed, and Court Rule 7, reproduced following Article 44.33, V.A.C.C.P., provided a prior procedure of first presenting a report on the application for postconviction relief to a panel of the Court—and still does. But impracticality of following this rule of procedure soon became evident and, consonant with other rules for bringing matters before the Court En Banc, i. e., Rules 11 and 12, the "rule of four" was implemented with respect to such applications and other extraordinary writs and special cases mentioned in the obsolescent Rule 7, supra.

position of a case with his client, have a relatively full understanding and awareness of the state's case. This means more than asking the client, after being appointed by the trial court, the conclusory question, "Are you guilty?" and receiving an affirmative response from the accused and then asking the client if the prosecutor has made a recommendation and, if so, is it satisfactory to the client, and then approaching the Bench to dispose of the case. That appears to me to be all that occurred in this case. Recently, the Fifth Circuit, in *Gaines v. Hopper*, 575 F.2d 1147 (5th Cir. 1978), in a panel opinion, pointedly said: "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." Thus, failure by counsel to conduct an investigation adequate for the performance of his duties will deprive an accused of effective assistance of counsel.

As each case is unique in itself, it would be impossible for this Court to set forth in one opinion what the duties of a court-appointed counsel, who is summoned to the courtroom from his office to dispose of a cause, might be. However, in my view, it certainly does not mean appearing in court to simply put the seal on the record to show the accused had counsel, or to put it colloquially, it does not mean merely appearing in court after the accused is "greased" and ready to plead, as appears to be the case here. At a minimum, counsel here could have at least read the file of the District Attorney to see if, in fact, under the law, his "client" was, as he said he was, guilty of the accusation.

In my view, the cumulative effect of the facts of this case is that the Petitioner was denied effective assistance of counsel as guaranteed by both our Constitutions. The actions of court-appointed counsel in this case was not "counsel reasonably likely to render and rendering reasonably effective assistance." See *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960).

The members of this Court do not live in a vacuum as many of us have defended many criminal cases, been court-appointed counsel for indigents, and have been trial judges in this state. The realities of life are not too far from us as we know they exist. The dockets of our metropolitan areas are bulging with cases to be disposed of and there should be no question that a proper disposition, as speedily as possible, should occur. That is why I do not choose to chastise the attorney appointed for Petitioner, for as I view the facts the system in his particular jurisdiction had denigrated itself to the point that all that was mandated was a "warm body" standing by the accused when he entered his plea. This is also true in other parts of the state. Although I could have simply concurred in the opinions of Judges Roberts, W. C. Davis and Clinton, and said no more and relied upon their comments, I personally feel a stronger message should be sent to the Bench and Bar that I, as a member of this Court, as other members of the Court also feel, will not countenance the mere presence of a "warm body" to mean effective assistance of counsel.

I, therefore, respectfully dissent to the action of the Majority in this cause but I join with what ROBERTS, W. C. DAVIS and CLINTON, JJ., all have said regarding this cause.