Lorraine MEEKS, Petitioner-Appellee,

v.

Donna BERGEN, Respondent-Appellant.

No. 83–1578.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1984.

Decided Nov. 27, 1984.

Rehearing and Rehearing En Banc
Denied Jan. 21, 1985.

Weick, Senior Circuit Judge, dissented and filed opinion.

Frank J. Bernacki (argued), Detroit, Mich., for respondent-appellant.

Marjory B. Cohen (argued), Detroit, Mich., for petitioner-appellee.

Before KRUPANSKY and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

The State of Michigan (the state) appealed the decision of the district court granting the petitioner-appellee, Lorraine Meeks' (petitioner) petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. The basis of the district court's judgment was a determination that petitioner had been denied effective assistance of counsel requiring habeas relief from her state court conviction. On appeal, the state initially alleged that the district court erred in reaching the merits of the petitioner's claim and additionally that the district court erred in determining that the petitioner was denied effective assistance of counsel.

The operative facts underlying the petitioner's state court conviction disclose that

on October 26, 1977 petitioner doused her common law husband, James Satchel (Satchel), with gasoline and ignited him, which action caused Satchel's death four days later.

At trial, petitioner asserted self defense and alleged that, throughout their ten years of marriage, Satchel physically abused her on numerous occasions, and that at the time of the incident in question, and on the day before, Satchel had assaulted and threatened to kill her.

Petitioner testified that on October 26, 1977, Satchel called her and informed her that he intended "to finish the job that I didn't do yesterday", referring to the assault he had perpetrated upon her person the day before which had rendered her unconscious. Consequently, petitioner alleged that she went to the garage and obtained some gasoline which she intended to throw on Satchel to irritate his skin should he attempt another assault.

Later that day, Satchel returned home, assaulted petitioner, and threatened her with a knife. When Satchel left the bedroom for a moment, petitioner attempted to lock the door. Upon Satchel's return to the bedroom, petitioner, in an attempt to prevent Satchel from resuming his assault upon her, doused Satchel with the gasoline, lit a piece of paper and ignited him.

Petitioner was charged with first and second degree murder in the Recorder's Court for the City of Detroit for causing Satchel's death, and was convicted by a jury of second degree murder. The court sentenced Meeks to a term of ten to twenty years imprisonment.

On the direct appeal, the state appeals court rejected the petitioner's two allegations of error arising from evidentiary rulings and affirmed the conviction. In the application for leave to appeal presented to the Michigan Supreme Court, the petitioner joined for the first time the issue of ineffective assistance of counsel. Specifically, petitioner identified her trial counsel's failure to introduce expert testimony concerning the "battered wife syndrome" as evidence of constitutionally deficient representation. The Michigan Supreme Court, however, denied petitioner leave to appeal.

Thereafter, the petitioner filed a petition pursuant to 28 U.S.C. § 2254 in federal district court for collateral relief. The district court determined that the petitioner had adequately exhausted her state court remedies and concluded that she had been denied adequate assistance of counsel at trial due to counsel's failure to introduce expert testimony of the battered wife syndrome.

There ensued the instant appeal.

On appeal, the state has initially alleged that the district court erred in reaching the merits of the petitioner's claims. The state has asserted that there was a failure to adequately exhaust state court remedies as to the ineffective assistance of counsel issue and accordingly the petition should have been dismissed without a reaching the merits. The state has relied on *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

■■■ The state's formulation of the issue as one of exhaustion is erroneous. As the Supreme Court noted in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed. 783 (1982), the question of whether a respondent is barred from litigating in a federal habeas corpus proceeding constitutional claims that were forfeited before the state court, is distinct from the issue of exhausted state remedies. Section 2254(b), in requiring habeas applicants to exhaust those remedies "available in the courts of the state", refers only to remedies still available at the time of the federal petition. *Engel v. Isaac, supra*, at 125 n. 28, 102 S.Ct. at 1570 n. 28. If a remedy had existed, then it must have been pursued before resort to the federal courts. If no remedy was available at the commencement of the federal action, but a remedy previously offered was not timely utilized, then a waiver analysis must be explored. *Engle v. Isaac, supra; Fornash v. Marshall*, 686 F.2d 1179 (6th Cir.1982); *Keener v. Ridenour*, 594 F.2d 581 (6th Cir.1979).

Although the petitioner did not join the issue of ineffective assistance of counsel on direct appeal from her criminal conviction, she did articulate the issue in her application for a delayed appeal, which was denied by the Michigan Supreme Court. Consequently, the petitioner has adequately exhausted her state remedies as required by 28 U.S.C. § 2254(b).[1] The relevant inquiry must probe whether petitioner's failure to join the issue of ineffective assistance of counsel on direct appeal constituted a waiver of her right to raise the issue in a federal habeas corpus proceeding, absent a showing of cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In *Sykes, supra,* the Supreme Court held that a defendant who failed to comply with state rules of procedure governing the timely presentation of federal constitutional claims forfeited the right to federal habeas corpus review of those claims absent a showing of "cause for noncompliance [with state procedure] and some showing of actual prejudice resulting from the alleged constitutional violation." *Id.* at 84, 97 S.Ct. at 2505.

*Sykes,* however, does not bar federal habeas corpus relief merely upon a showing that an adequate procedural ground was available to support a conviction; rather *Sykes* mandates that it must be demonstrated that the state court had *relied* upon the procedural default. Where a state appellate court did not rely on the procedural default, but reached the merits of a claim, the *Sykes* bar is inapplicable. The rationale of this rule requires that in instances where the state courts themselves decline to honor a procedural bar, the federal courts do no damage to precepts of comity and federalism by similarly addressing the merits of a claim. *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Raper v. Mintzes,* 706 F.2d 161 (6th Cir.

1983). While the petitioner did not raise ineffective assistance of counsel as error on the direct appeal, she did charge the error in her application for a delayed appeal. In denying her application for leave to appeal the Michigan Supreme Court noted:

> On order of the Court, the delayed application for leave to appeal is considered, and it is *denied,* because the Court is not persuaded that the questions presented should be reviewed by this Court. The motion for bond pending appeal is also considered, and it is *denied.*

In *Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir.1980), this court held "that a federal court must determine whether the petitioner's failure to comply with the contemporaneous objection requirement was a substantial basis for the state court's denial of petitioner's claim". This court suggested in that case that federal review of habeas corpus claims is not precluded when, even in instances where the petitioner failed to object at trial, the state court did not *rely* upon "an adequate and independent state procedural ground" for dismissal. 620 F.2d at 115; *see also, Jones v. Jago,* 701 F.2d 45 (6th Cir.1983). The standard for determining if the state courts have waived their own procedural bar, however, has not been precisely defined.

A review of the state supreme court's order in the case at bar does not indicate if the court rejected plaintiff's claims on state procedural grounds or upon the merits. Where the basis of a state courts decision is unclear, this circuit in *Raper, supra,* set forth the standard to be applied in determining if the state court relied upon a procedural default. Specifically, the court noted:

> Where the basis for the state court's decision is unclear, we believe that the federal habeas court must look to the arguments presented to the state court. *See, Martinez v. Harris,* 675 F.2d 51 (2d

1. Once a federal claim has been *presented* to a state's highest court, the exhaustion requirement is satisfied, even if the state court failed to address the federal claim. *Smith v. Digmon,*

434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Ridgeway v. Baker,* 720 F.2d 1409 (5th Cir.1983).

Cir.1982). In *Martinez*, the Second Circuit announced the following rules for ascertaining the basis of the state court's decision: (1) if the state prosecutor only argued the merits of the petitioner's claim before the state court and failed to raise the procedural default issue, the federal court may assume that the state court ruled only on the merits; (2) if the prosecutor relied solely on the procedural default, the federal court may assume that that was the only basis for the state court's decision; and (3) if the prosecutor argued in the alternative, the federal court may assume that the state court did not rely solely on the merits unless it says so. *Id.* at 54–55.

A review of the state filings in response to the petitioner's application for a delayed appeal reveals that the state argued in the alternative, asserting both the alleged procedural default and the merits of petitioner's assigned errors.[2] Where, as here, the state has argued in the alternative, *Raper* teaches that the federal courts may assume that the state court did not rely solely upon either the merits or the procedural grounds. Accordingly, the district court here concluded that the state court did not rely upon the procedural default.

The district court noted that the Michigan Supreme Court does not routinely decline to review issues which were not raised in the court below. Accordingly, absent any indication by the Michigan Supreme Court that it was relying upon a procedural default, the district court concluded that the Michigan Supreme Court denied petitioner's application for a delayed appeal upon a review of the merits, thus permitting federal habeas corpus review of petitioner's claims.

■ Indeed, although the Michigan Supreme Court has held that it customarily refuses to consider issues not raised before the lower courts, *see Young v. Morall*, 359 Mich. 180, 101 N.W.2d 358 (1960), the state court has also noted that it would not apply the rule in an inflexible manner. *See Swartz v. Dow Chemical Co.*, 414 Mich. 433, 326 N.W.2d 804 (1982); *People v. Lynch*, 410 Mich. 343, 301 N.W.2d 796 (1981); *People v. Snow*, 386 Mich. 586, 194 N.W.2d 314 (1972). Consequently, absent any indication by the Michigan Supreme Court that it was relying upon a procedural default in the case *sub judice*, the district court correctly determined that the state court did not rely upon the alleged procedural default. Therefore, the district court properly reached the merits of petitioner's claim.

Having determined that the district court properly addressed the merits of petitioner's claim, this court encounters the state's second allegation on this appeal, namely that the district court erred in finding that the petitioner had been denied effective assistance of counsel.

The district court determined that defense counsel's failure to investigate or present a battered wife defense at trial deprived plaintiff of effective assistance of counsel.

This circuit, in *Beasley v. United States*, 491 F.2d 687 (6th Cir.1974), set forth the standard to determine whether a petitioner was provided effective assistance of counsel as guaranteed by the Sixth Amendment as follows:

> We hold that the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. *Johns v. Perini*, 440 F.2d 577, 479 (6th Cir.1971); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *King v. Beto*, 429 F.2d 221, 225 (5th Cir.1970), *cert. denied*, 401 U.S. 936, 91 S.Ct. 921, 28 L.Ed.2d 216 (1971); *Chalk v. Beto*, 429 F.2d 225, 227 (5th

---

**2.** The state's answer discloses that the state defended primarily upon procedural grounds, but that it also addressed the merits.

Cir.1970). Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441 [1449], 25 L.Ed.2d 763 (1970). Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner. *Reece v. Georgia*, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955); *Wilson v. Phend*, 417 F.2d 1197 (7th Cir.1969).

*Id.* at 696.

The United States Supreme Court recently had occasion to directly address the issue of the ineffectiveness of trial counsel in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court reiterated that the Sixth Amendment right to counsel guarantees effective assistance of counsel. Additionally, in *United States v. Cronic*, —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court held that "[t]he right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred". *Id.* at 2045; *accord Strickland, supra.*

 A convicted defendant's charge that he was denied effective assistance of counsel, to be successful, requires that the defendant prove: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* The Supreme Court has cautioned, however, that judicial scrutiny of counsel's performance must be highly deferential. A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 2066 (citing *Michel v. New York*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

Accordingly, the first element of the *Strickland* analysis demands that a defendant show that the attorney's efforts fell below an "objective standard of reasonableness ... under prevailing professional norms". *Id.* 104 S.Ct. 2064. This requirement invokes the standard, long employed by this circuit, that "[d]efense counsel must perform at least as well as a lawyer with ordinary training and skill.... [Only] [d]efense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel". *Beasley, supra,* 491 F.2d at 696.

The second criterion of *Strickland* necessitates a showing by the defendant "that counsel's errors were so serious as to deprive the defendant of a fair trial". *Strickland, supra,* 104 S.Ct. at 2064.

 While the district court's findings of fact regarding the petitioner's ineffective assistance of counsel claim are subject to the clearly erroneous standard of Fed.R.Civ.Pro. 52(a), the issue of ineffective assistance of counsel is a mixed question of law and fact open to appellate review. *Strickland, supra,* at 2070; *Adams v. Jago,* 703 F.2d 978 (6th Cir.1983).

At the evidentiary hearing conducted by the magistrate in the instant case, petitioner's trial attorney testified to having practiced law in the State of Michigan since 1956 with a substantial portion of that practice devoted to criminal law. The trial counsel further testified that, based upon his conversations with petitioner, he decided to pursue a claim of self defense, rather than a battered wife defense. This decision was assertedly premised upon the fact that the deceased had attacked petitioner the day prior to the incident, had come to the petitioner's home after threatening her on the telephone, had assaulted her at the

time the incident occurred, and had threatened to kill her.

Furthermore, defense counsel stated that he did not raise a battered wife defense because he felt that such a defense was more appropriate in a situation where a woman had attacked her husband while he slept rather than in a situation, such as that presented by this case, where petitioner reacted to an immediate life threatening situation. Moreover, defense counsel asserted that the presentation of a battered wife defense would have supported the government's claim that petitioner had acted wilfully out of revenge for past beatings by the deceased, rather than in self defense.

In *Strickland, supra,* the Supreme Court stated that where there is more than one possible defense, and counsel conducts a substantial investigation into the possible defenses, the strategic choice made as a result of the investigation is "virtually unchallengeable", the Court noted additionally that, even should counsel fail to conduct a substantial investigation into each of several plausible lines of defense, the representation might nonetheless be effective. The Court concluded that strategic choices made after less than complete investigations are reasonable precisely to the extent that reasonable professional judgment supported the limitations on investigation. Factors to be reviewed in such an instance are the experience of the attorney, the inconsistency of unpursued defenses, and the potential for prejudice resulting from the unpursued line of defense.

Reviewing the two part test enunciated by the Supreme Court in *Strickland, supra,* it appears that the petitioner was not denied effective assistance of counsel. With respect to the performance component, the record reflects that petitioner's counsel made a strategic decision to assert a claim of self defense rather than a battered wife defense. Although defense counsel was of the opinion that the battered wife defense was only applicable where the wife was the aggressor, petitioner's counsel believed that the petitioner's best opportunity to obtain an acquittal was to assert that she acted in self defense. The facts as related by the petitioner at trial clearly support a colorable self defense claim.

Petitioner has asserted that trial counsel's belief that evidence of prior assaults by the decedent would have supported the government's claim that the petitioner had acted willfully rather than in self defense was illogical, unreasonable and highly prejudicial to the petitioner's defense. Petitioner has argued that evidence of a history of violence, far from bolstering an inference of revenge, would have demonstrated that she had not responded violently to prior attacks, but that in the instant case she had acted out of a legitimate fear for her life. At trial, however, decedent's prior abuse of the petitioner was disclosed to the jury. In the opening statement petitioner's trial counsel mentioned a history of wife abuse on behalf of the decedent and upon cross examination the petitioner testified to her history of physical abuse while living with decedent. Thus, there was evidence presented to the jury from which it could have determined that the decedent had been the aggressor and that because of the decedent's prior violence towards her, her state of mind was in fact one of apprehension of immediate danger.

Finally, petitioner has also urged that trial counsel erred in failing to produce expert testimony concerning the petitioner's state of mind. Such expert testimony, petitioner has asserted, is vital to explain how repeated physical and psychological abuse lead a battered wife to perceive herself in imminent danger and to believe that she must respond with deadly force. It is important to note that the petitioner at the evidentiary hearing before the magistrate failed to produce expert testimony that she in *fact* suffered from the battered wife syndrome. In *Strickland, supra,* the Supreme Court held that a petitioner must establish that there is a reasonable probability that, had counsel not erred, the result of the proceeding would have been different. A "reasonable probability" is a proba-

bility sufficient to undermine confidence in the outcome. Accordingly, the petitioner has failed to affirmatively establish that she suffered any prejudice.

Consistent with the foregoing, the judgment of the district court is reversed.

WEICK, Senior Circuit Judge, dissenting:

I respectfully dissent on the ground that the petitioner was denied the effective assistance of counsel in a number of particulars as required by the Sixth Amendment to the Constitution of the United States.

The district court, where the petition for a writ of habeas corpus was pending, ordered that an evidentiary hearing be conducted before a United States Magistrate stating:

... that the resolution of this issue would depend on the factual determination of several issues:

1. Whether petitioner told defense counsel before trial about other possible defense witnesses and documentary evidence;

2. Whether defense counsel made a reasonable investigation of such other witnesses and evidence;

3. The reasons, if any, for counsel's not using that evidence;

4. Whether, at the time of petitioner's trial, a reasonably competent attorney would have investigated and pursued expert testimony concerning the "battered spouse syndrome" ["bss"];

5. Whether defense counsel made such an investigation, or his reasons for not doing so, and

6. Whether, *inter alia,* defense counsel through incompetence or inadvertence, deprived petitioner of a substantial defense under *Beasley v. United States,* 491 F.2d 687 (6th Cir.1974).

An evidentiary hearing was held on May 25, 1983, at which the petitioner testified. The petitioner's trial counsel, Marshall Hill ("Hill") also testified, as did Clinton Touchstone. David DeMouchel, who was offered by the petitioner as an expert witness on the standard of competence of criminal defense attorneys, was the final witness. [Footnote 1 omitted]. The parties subsequently filed posthearing briefs. The questions presented in Judge Cohn's memorandum opinion will be discussed, in order, below.

**1. Whether Petitioner Told Defense Counsel Before Trial about Other Possible Defense Witnesses and Documentary Evidence.**

The trial transcript indicates that defense counsel called no witnesses to the stand other than the petitioner. At the evidentiary hearing, the petitioner stated that she gave Hill the names of several persons who could testify at trial and who had witnessed prior violence by Satchel against others. She stated that she told Hill that her children could also testify about past violence between Satchel and herself. She stated that Hill told her that he would call these persons as witnesses, but that several days before the trial Hill told her that he had changed his mind and that he would not call any other witnesses because he did not see the need to do so. The petitioner stated that several of these witnesses were present at the petitioner's criminal trial, including Mr. and Mrs. Clinton Touchstone; Timothy Ross, the petitioner's father; the petitioner's children, Janet and Kerry; Timothy Ross, Jr., the petitioner's brother; and the petitioner's husband's business partner, who was unnamed.

Clinton Touchstone testified at the hearing that he met the plaintiff through Satchel, whom he had known since 1962. Touchstone was aware of Satchel's reputation for violence against women, and Satchel told Touchstone that he beat and threatened the petitioner, by holding a knife or pistol to the petitioner. Touchstone had seen bruises on the petitioner's face and knees and had seen her limping. Touchstone also knew that Satchel had been violent against one Addie Henderson. Touchstone stated that he attended the petitioner's trial and approached Hill to ask if he would be a witness at trial

because he knew of Satchel's history of violence. Hill told Touchstone that he would let him know if he needed any witnesses.

### 2. Whether Defense Counsel Made A Reasonable Investigation of Such Other Witnesses and Evidence

Hill did not talk to any witnesses other than Touchstone in court, or obtain copies of any police reports of any prior incidents of violence.

### 3. The Reasons, If Any, For Counsel's Not Using That Evidence.

Hill testified at the hearing that the petitioner told him "early on" that Satchel had a history of violence against her. He did not remember if the petitioner gave him the names of witnesses to Satchel's prior violence, but he did not attempt to interview any such witnesses. Even after the prosecutor extensively cross-examined the petitioner about the prior history of violence between the spouses, Hill did not reconsider this position.

Hill acknowledged that the prosecutor extensively commented on the lack of corroboration of the history of violence in his closing argument.[2]

Hill testified that he did not attempt to corroborate the petitioner's testimony because he did not believe that the facts of this case formed the basis of a "bss" defense, and he thought that this evidence would weaken the defense of self-defense. Specifically, Hill stated that he had concluded that evidence of prior assaults would corroborate the prosecutor's contention that the petitioner's assault on Satchel was motivated by revenge.

(Magistrate's Report App. pp. 25a–29a).

---

[2] The trial transcript indicates that in his closing argument, the prosecutor stated several times that no witnesses were called to the stand to corroborate the petitioner's statements about prior assaults (tr. 4/20/78, pp. 18, 21, 32).

Petitioner's attorney, Hill, was erroneous in his testimony before the magistrate in endeavoring to excuse his failure to call any witnesses to corroborate the testimony of his client, because he believed it would show that her defense against his last assault upon her was motivated by revenge. The fact is that Satchel, as stated in the majority opinion, had threatened to kill her and approached her with a knife in his hand. Surely she had a lawful right to defend herself and if she had not done so, she would have been stabbed to death by her husband's knife.

The petitioner's attorney did not even investigate the defense of "battered spouse syndrome" of which he had been advised. The majority, however, bases it decision entirely on the "battered spouse syndrome" and did not even consider or discuss the other failures of defense counsel to corroborate the testimony of petitioner with a multitude of other witnesses who were available and even present in the courtroom as to the past conduct of Satchel in beating and injuring his common law wife and other women and men.

The magistrate's Report and Recommendation was carefully prepared and consists of 15 pages in which he adopted findings of fact and conclusions of law, and holds that petitioner had been deprived of the effective assistance of counsel.

The district judge, in a Memorandum and Order Granting Writ of Habeas, accepted the findings and recommendations of the magistrate and denied the exceptions filed thereto.

The factual findings of the magistrate adopted by the district court are binding on the majority, as they are supported by substantial evidence and are not clearly erroneous. The conclusions of law of the district court are also correct. I disagree with the majority that this is a mixed question of fact and law and that the majority can adopt findings of fact.

This requires affirmance of the judgment of the district court granting the writ of habeas corpus as the constitutional rights of petitioner were clearly violated.