811 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patrick Francis GLENN, Petitioner-Appellant,
v.
Dewey SOWDERS, Warden of Northpoint Training Center,
Respondent-Appellee.
 No. 85-5754.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1986.
 
 Before KENNEDY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner-appellant Patrick F. Glenn appeals the district court's order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. On appeal petitioner argues that he was denied his sixth and fourteenth amendment right to effective assistance of counsel at his trial. Finding no merit in his argument, we affirm.
 
 I.
 
 2
 During January and February of 1979, at least five homes in Jefferson County, Kentucky, were burglarized. In each instance, entry was gained by prying open a door or breaking the door lock with a wrench. In addition to the other property taken from these residences, several rifles were taken from the homes of Emma Jean Stivers and Alta Mae Reese.
 
 
 3
 On February 7, 1979, Jefferson County police officers were informed by radio that a burglary was in progress and were advised to stop a blue Rambler with three suspects inside. The officers located the blue Rambler and apprehended the driver, Delbert Thompson. Thompson informed the officers that the other two suspects were proceeding on foot to an apartment complex on Minette Circle to pick up a brown Mercury, which belonged to one of them.
 
 
 4
 Detective Ray Fravert proceeded to Minette Circle and located the brown Mercury in the parking lot. Detective Fravert "ran the license number" and learned that the car was registered to petitioner. Fifteen or twenty minutes later, Detective Fravert observed petitioner remove from the trunk of the brown Mercury a four foot long package wrapped in a white sheet. Petitioner handed the package to James Corbett, who took off running. Detective Fravert apprehended petitioner and radioed for further assistance. Detective Joe Booth responded to Detective Fravert's call for assistance and apprehended Corbett in a field near the apartment complex.
 
 
 5
 On the following morning, Detective Booth located a large white bundle along the fence line in the field where Corbett was arrested. Inside the bundle were several rifles and shotguns stolen from the Stivers and Reese homes. Detective Booth later searched Corbett's residence and recovered more than "a van and a half full" of stolen merchandise.
 
 
 6
 Thompson provided a statement to Detective Booth in which he confessed that he had met with Corbett and petitioner earlier in the evening and that they had planned to use the Rambler to commit burglaries that evening. Thompson further confessed that they attempted to burglarize a house but were deterred by the occupant's screams. Finally, Thompson confessed that the three had burglarized other homes, including the Stivers home.
 
 
 7
 Petitioner was indicted by the Jefferson County, Kentucky, grand jury on five counts of first-degree burglary and on one count of being a "Persistent Felony Offender in the Second Degree." Thompson and Corbett were indicted on multiple counts of first-degree burglary and receiving stolen property. Corbett pled guilty, and the case proceeded to trial against Thompson and petitioner.
 
 
 8
 Following a jury trial, petitioner was convicted of two counts of first-degree burglary involving the Reese and Stivers homes and of receiving stolen property. He was sentenced to concurrent terms of twenty years imprisonment on each of the first-degree burglary counts and three years imprisonment for receiving stolen property. In a subsequent proceeding, petitioner pled guilty to the "Persistent Felony Offender" charge, and petitioner's two twenty-year sentences were each enhanced to twenty-two years.
 
 
 9
 Petitioner appealed his conviction to the Kentucky Supreme Court alleging that there was insufficient evidence to support the verdict, that Detective Booth's testimony included inadmissible hearsay, and that he was denied effective assistance of counsel. The court rejected petitioner's evidentiary challenge because defense counsel had not objected to the admission of the evidence and found the evidence sufficient to sustain the verdict. The court refused to consider petitioner's ineffective assistance of counsel claim because he had not raised the claim by motion in the trial court.
 
 
 10
 Petitioner filed a motion in Jefferson County Circuit Court to vacate the conviction claiming ineffective assistance of counsel. Following a hearing, the court overruled petitioner's motion. The Kentucky Court of Appeals affirmed, finding that petitioner's counsel performed "at least as well as a lawyer with ordinary training and skill in criminal law."
 
 
 11
 Petitioner filed a petition for a writ of habeas corpus in the district court claiming ineffective assistance of counsel. The district court found that defense counsel's disclosure of a prior rape conviction was an "unreasonable error," but found that petitioner was not prejudiced because "there was no further mention of the conviction during the trial" and because the trial court admonished the jury "that any testimony as to convictions of any witnesses were [sic] admissible only for purposes of impeachment." Joint Appendix at 3. The district court further found that defense counsel's failure to cross-examine Thompson "at any length" did not constitute error because Thompson's bias was developed on direct examination, but that the failure to cross-examine Stivers could have constituted "serious error had it not been for the evidence of Thompson to the effect that he, petitioner and Corbett committed all of the burglaries as a team." Id. Finally, the district court found that petitioner's counsel's failure to object to Detective Booth's testimony concerning prior surveillance of petitioner by the city police department and Corbett's purported statement implicating petitioner did not constitute error because "this evidence was merely cumulative of the testimony offered by the victims of the burglaries" and because "nothing contained in the hearsay statement implicated the petitioner." Id.
 
 
 12
 The district court's finding that no mention of defendant's rape conviction was made after voir dire is in error. The prosecutor, during closing argument, stated: "[Glenn's counsel] talks about he's got these convictions ..., but you don't have to worry about that because what we've got right now is this case." Trial Transcript at 186. Moreover, defense counsel referred to the conviction during direct examination of Glenn and during closing argument. The district court's finding that petitioner was not implicated by Booth's hearsay statement is also in error. Booth's reference to the "ones that the three had burglarized" clearly refers to Corbett, Thompson and petitioner.
 
 II.
 
 13
 Whether a criminal defendant has received effective assistance of counsel is a mixed question of law and fact. Meeks v. Bergen, 749 F.2d 322, 327 (6th Cir.1984). The district court's findings of fact are subject to the clearly erroneous standard of review. Id. However, the conclusion to be drawn from the facts regarding the effectiveness of counsel's assistance is subject to de novo review. Id.
 
 
 14
 The substantive standard to be applied in determining whether petitioner received effective assistance of counsel consists of two parts. First, petitioner must prove that counsel's "efforts fell below an 'objective standard of reasonableness ... under prevailing professional norms.' " Meeks, 749 F.2d at 327 (quoting Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064 (1984)). Petitioner bears the burden of overcoming a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.; see also Strickland, 104 S.Ct. at 2066. Second, petitioner must prove that counsel's deficient performance prejudiced the defense. Meeks, 749 F.2d at 327. Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S.Ct. at 2068.
 
 
 15
 In evaluating petitioner's argument, "it must be kept in mind that effective counsel is not errorless counsel, and that we should not rely on hindsight in measuring effectiveness." Solomon v. Kemp, 735 F.2d 395, 402 (11th Cir.1984); see also Strickland, 104 S.Ct. at 2065-66. "[D]eliberate trial tactics may constitute ineffective assistance of counsel if they fall 'outside the wide range of professionally competent assistance.' " Martin v. Rose, 744 F.2d 1245, 1249 (6th Cir.1984) (quoting Strickland, 104 S.Ct. at 2066).
 
 
 16
 A. Disclosure of Petitioner's Prior Conviction
 
 
 17
 Petitioner claims his trial counsel was ineffective in disclosing to the jury during voir dire that petitioner had previously been convicted of rape and had served eight years in the penitentiary. Under Kentucky law, petitioner's prior rape conviction was not admissible for purposes of impeachment. Impeachment of a witness by proof of a prior conviction is limited to conviction of a crime involving dishonesty. See, e.g., Burgess v. Commonwealth, 564 S.W.2d 532, 533-34 (Ky.1978); Harris v. Commonwealth, 469 S.W.2d 68, 70 (Ky.1971). The crime of rape does not involve dishonesty and is not relevant to the issue of credibility. Harris, 469 S.W.2d at 70.
 
 
 18
 Respondent argues that disclosure of the prior rape conviction was not unreasonable since it was part of defense counsel's strategy to bolster petitioner's honesty and candor. The record, however, evinces that defense counsel's decision to disclose the prior rape conviction was based on his belief that the conviction was admissible. Defense counsel stated to the jury: "Now, sometime during the trial, either today or tomorrow, you are going to find out ... when he was in his early twenties he was convicted or [sic] Rape...." Joint Appendix at 9. Moreover, defense counsel testified at the postconviction hearing that he disclosed the prior rape conviction "so it would not come as a surprise" to the jury and that he did not know whether the conviction was admissible. Transcript of Postconviction Hearing at 26. Because petitioner's prior rape conviction was not admissible, defense counsel's decision to disclose the conviction falls " 'outside the wide range of professionally competent assistance.' " Martin, 744 F.2d at 1249 (quoting Strickland, 104 S.Ct. at 2066).
 
 
 19
 Petitioner claims that disclosure of the prior rape conviction was prejudicial in that the jury may have convicted him of the offenses charged because it was aware of the prior conviction. Petitioner's claim is belied by the fact that petitioner was convicted of only three of the six counts charged in the indictment. Moreover, the evidence that petitioner committed the crimes for which he was convicted is overwhelming. Thus, petitioner has failed to demonstrate that defense counsel's error caused him any prejudice.
 
 B. Cross-Examination of Witnesses
 
 20
 Petitioner claims that his counsel was ineffective in failing to cross-examine key prosecution witnesses. Mrs. Stivers testified that on the evening her home was burglarized, she observed a person on her neighbor's porch holding the door open. Mrs. Stivers tentatively identified petitioner as the person on her neighbor's porch. At the postconviction hearing, defense counsel explained his decision not to cross-examine Mrs. Stivers:
 
 
 21
 I didn't want to make it any stronger. I didn't want to go back over it, and have her say positively, yes, it was him.
 
 
 22
 She was doubting in her statement. I don't remember exactly what it was, but it wasn't a real positive statement, and one that I decided to leave alone.
 
 
 23
 Transcript of Postconviction Hearing at 22. Defense counsel did, however, point out the weakness of Mrs. Stivers' identification during closing argument.
 
 
 24
 Thompson testified that he and petitioner burglarized the Reese and Stivers homes. Thompson further testified that he and his attorney met with the prosecutor prior to trial and that he hoped to receive favorable consideration in exchange for his testimony. While defense counsel did not cross-examine Thompson, he did point out Thompson's bias during closing argument.
 
 
 25
 Detective Fravert testified that on the evening of the arrest he observed petitioner remove a package from his car and hand it to Corbett, who then ran off. Detective Booth testified that the package he recovered from the field was "extremely heavy" and that he needed help to carry it to his car. Defense counsel did not cross-examine Detective Fravert and did not raise during cross-examination of Detective Booth the possible discrepancy in the testimony of the officers concerning the weight of the object removed from petitioner's car. Defense counsel did, however, note the possible discrepancy during closing argument.
 
 
 26
 Defense counsel's decisions regarding cross-examination were matters of trial strategy and are entitled to "great respect" by this court. United States v. Clayborne, 509 F.2d 473, 479 (D.C.Cir.1974); see also Lockett v. Arn, 740 F.2d 407, 412 (6th Cir.1984), cert. denied, 106 S.Ct. 3332 (1986). In Clayborne, the court explained:
 
 
 27
 It is a difficult task for a court to attempt to tell experienced defense counsel how to defend their clients--particularly with respect to cross-examination and trial tactics.... [C]ross-examination a sharp two-edged sword and more criminal cases are won by not cross-examining adverse witnesses, or by a very selective and limited cross-examination of such witnesses, than are ever won by demolishing a witness on cross-examination.... [C]ross-examination very frequently operates to emphasize the critical points in a witness' testimony, and although it may initially be helpful to the defense in some instances, points on cross-examination can usually be answered and discrepancies explained in favor of the prosecution by re-direct examination.
 
 
 28
 509 F.2d at 479. Under the circumstances of this case, defense counsel's failure to cross-examine Mrs. Stivers, Detective Fravert, and Thompson was the result of reasoned tactical decisions and does not constitute deficient performance.
 
 
 29
 C. Failure to Object to Inadmissible Evidence
 
 
 30
 Petitioner claims that his counsel was ineffective in that he failed to object to Detective Booth's testimony that property from one of the burglaries recovered from Corbett's home came from "one of the houses that Mr. Corbett had shown me earlier as one of the ones the three had burglarized." Petitioner contends that the admission of this testimony violated the rule established in Bruton v. United States, 391 U.S. 123 (1968), prohibiting the introduction of a statement of a nontestifying codefendant which implicates the defendant. At the postconviction hearing, defense counsel admitted that he was unaware of the implications of the Bruton decision.
 
 
 31
 However, the record evinces that when Detective Booth commented that Corbett had identified one of the houses he was actually referring to Thompson. Earlier in his testimony, Detective Booth indicated that Corbett refused to cooperate and denied knowing the two other defendants. Detective Booth then testified that Thompson had taken the detectives around the city and identified houses the three had burglarized. While discussing the individual burglaries, Detective Booth testified that he recovered some of Mr. Jolley's property from the Corbett residence and that Mr. Jolley's house was one of the houses identified by "Corbett." Only a few sentences later, Detective Booth testified that his prior testimony was that it was Thompson who identified Mr. Jolley's house as one of the houses burglarized by the defendants. Trial Transcript at 84-94. Because Thompson did testify and was available for cross-examination, no violation of Bruton occurred and no objection was warranted.
 
 
 32
 Petitioner also claims that his counsel was ineffective in failing to object to Detective Booth's testimony that he was advised by a city police officer prior to petitioner's arrest that the city police, as part of an ongoing investigation, had been following petitioner. Petitioner contends that admission of the testimony violated the Kentucky hearsay rule, which prohibits use of an out-of-court statement to prove the truth of the matter asserted. See, e.g., Buckler v. Commonwealth, 541 S.W.2d 935, 937 (Ky.1976). Even assuming that defense counsel's failure to object to introduction of the evidence constitutes deficient performance, petitioner has failed to demonstrate any prejudice resulting therefrom. See Strickland, 104 S.Ct. 2069-70.
 
 
 33
 D. Failure to Challenge Potential Bias of a Juror
 
 
 34
 Finally, petitioner claims that his counsel was ineffective in failing to ascertain whether one of the jurors knew Mrs. Stivers. During voir dire, one of the jurors, when asked if she knew Mrs. Stivers, asked if Mrs. Stivers was related to Dr. Stivers on DuPont Circle. Mrs. Stivers was brought into the courtroom, but the juror made no indication that she knew Mrs. Stivers. The record indicates that Mrs. Stivers' address was 401 Serate Drive and that this information was before defense counsel during voir dire. Trial Transcript at 2. Given these facts, defense counsel's failure to make further inquiry does not constitute deficient performance.
 
 III.
 
 35
 The judgment of the district court is AFFIRMED.