861 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roosevelt ELSWICK, Petitioner-Appellant,
v.
Al PARKE, Warden, Respondent-Appellee.
 No. 87-6242.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1988.
 
 Before: KRUPANSKY and RALPH B. GUY, Jr., Circuit Judges, JAMES L. GRAHAM, District Judge.*
 PER CURIAM.
 
 
 1
 On April 23, 1981, petitioner, Roosevelt Elswick, was found guilty of first degree rape, and his conviction was subsequently affirmed on direct appeal by the Kentucky Court of Appeals and the Kentucky Supreme Court. Petitioner unsuccessfully attempted to obtain post-conviction relief from the state courts under Kentucky Rule of Criminal Procedure 11.42. After exhausting his state remedies, petitioner filed a habeas claim in the federal district court for the Eastern District of Kentucky. On October 9, 1987, the district court issued an order denying the petition for a writ of habeas corpus. For the following reasons, the judgment of the district court is affirmed.
 
 I.
 
 2
 On September 16, 1980, a two-count indictment was returned in Pike County Circuit Court charging petitioner, and his wife, Brenda Elswick, with first-degree rape and first-degree sexual abuse. The indictment alleged that the Elswicks raped their eleven year old grandniece, Lucy Elswick. Petitioner and his wife pleaded not guilty to the charges and a trial was held on April 22 and 23, 1981. The main witness for the prosecution was the alleged victim, Lucy Elswick. Lucy testified that in March of 1979, Roosevelt and Brenda Elswick visited her parents home. Lucy claimed that Roosevelt convinced her to spend the night at his house by claiming that Lucy's father had given his permission. Lucy then accompanied Roosevelt and his wife to their trailer where she claims that the couple molested her. Specifically, Lucy testified that Roosevelt Elswick had intercourse with her while Brenda Elswick held her down by laying on her arm. Lucy further testified that Brenda also performed oral sex on her. (App. 44). Lucy claimed that she did not cry out or struggle during the incident, instead she pretended to be asleep. Later that evening, upon learning that Lucy had left with Roosevelt and Brenda, Lucy's father, Ernest Elswick, drove to their trailer and brought his daughter home. Lucy claimed that she did not tell her father what had happened because she "was too nervous and scared." Lucy also testified to three subsequent incidents in which she claimed that she was molested by Roosevelt or his wife Brenda. Lucy's younger sister, Shawna, who was nine years old at the time of trial, also testified in corroboration of her sister's testimony. Shawna testified at trial that she was in bed with her sister during the summer of 1980 when Roosevelt molested Lucy. Apparently, neither petitioner nor his wife were ever charged with any crimes in connection with these subsequent incidents.
 
 
 3
 Lucy's father was called upon by defendant Brenda Elswick to testify at trial. Ernest Elswick testified that he had not given his daughter Lucy permission to stay with Roosevelt and Brenda Elswick and that when he found out that she was with them, he drove to their trailer to get her. He testified that Lucy did not seem upset when he arrived and that she did not tell him that she had been raped. Approximately one year later, Ernest Elswick became suspicious after hearing rumors from other family members so he decided to have his daughter Lucy examined by a physician. After the examination, Lucy told her father about the rape. During the course of cross-examination, Ernest Elswick denied the accusation that he had beaten his daughter and had forced her to testify against Roosevelt and Brenda Elswick. Both Roosevelt and Brenda Elswick testified on their own behalf and swore that they had never raped or molested Lucy Elswick.
 
 
 4
 In connection with seeking post-conviction relief from the Kentucky courts, petitioner submitted the affidavits of both Lucy and Ernest Elswick in which they recanted their testimony at trial. In her affidavit, Lucy stated: "The affiant does hereby recant her testimony given at the trial of the above-captioned case. The affiant further states that Roosevelt Elswick did not commit the crime of which he was convicted." (App. 11). In his two-page affidavit, Ernest Elswick swore that, "I was mad and having trouble with Roosevelt at the time and made my daughter say that she was having sex with Roosevelt." In his affidavit, Ernest Elswick further claimed that he met with the prosecuting attorney and Roosevelt Elswick's defense attorney prior to the trial and agreed to a plan to "frame" Roosevelt and his wife Brenda. (App. 13-14). At a subsequent hearing before the court, however, Lucy Elswick repudiated the statements made in her affidavit and reaffirmed her original testimony at trial. Ernest Elswick could not be located and therefore did not testify at the hearing; however, other witnesses appeared who testified that the allegations contained in Elswick's affidavit were false. In light of the evidence presented at the hearing, the court concluded that Lucy Elswick's original testimony at the trial was truthful. The state court also rejected the petitioner's other arguments and denied his motion for post-conviction relief. This ruling was affirmed by the Kentucky Court of Appeals and a motion for discretionary review was subsequently denied by the Kentucky Supreme Court.
 
 II.
 
 5
 Petitioner raises five issues in his habeas petition. First, petitioner claims that he was denied his right to a fair trial because the prosecutor failed to disclose information requested by the petitioner's counsel in a pretrial motion. Second, petitioner claims that there was insufficient evidence to support his conviction. Third, petitioner argues that he is entitled to habeas relief in light of the affidavits filed by Lucy and Ernest Elswick recanting their testimony. Fourth, petitioner claims that his trial counsel failed to conduct an adequate pretrial investigation thereby depriving him of his right to effective assistance of counsel as guaranteed by the sixth amendment. Finally, petitioner claims that he was denied a fair trial based on remarks made by the prosecutor at trial and the improper introduction of prejudicial evidence. We address these issues seriatim.
 
 
 6
 Relying on Brady v. Maryland, 373 U.S. 83 (1963), petitioner contends that he was deprived of his right to a fair trial based on the fact that the prosecution did not disclose the fact that Lucy Elswick had been examined by a physician prior to trial. The record before us seems to indicate that the doctor who examined Lucy Elswick did not testify on behalf of the state at trial. The doctor did, however, appear before the Kentucky court at one of the petitioner's post-trial hearings. At that time, the doctor testified that based on his examination of Lucy Elswick, he had concluded that she had "probably" engaged in sexual relations in the past, but that he could not be sure. Petitioner argues that this information was material to the issue of his guilt or innocence and should have been disclosed to him prior to trial. Given the inconclusive nature of the medical report, we find that the result of the criminal trial would not have been different, even if the evidence had been disclosed and that there was no "reasonable likelihood that the testimony could have affected the judgment of the trier of fact." See United States v. Bagley, 473 U.S. 667, 681-82 (1985) (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 874 (1982)). It is also apparent that defendant and his counsel were aware that a medical examination had taken place.
 
 
 7
 We now consider the petitioner's claim that there was insufficient evidence to support his conviction of first-degree rape. In reviewing a state court criminal conviction for sufficiency of evidence, a federal court must determine "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (emphasis in original). In the instant case, the victim herself testified to the circumstances of the rape and her father testified that his daughter was staying with the petitioner on the night the rape allegedly occurred. The jury obviously credited the testimony of the victim and discredited the denials of the petitioner and his wife. Accordingly, we find ample evidence from which the jury could conclude that the petitioner was guilty.
 
 
 8
 Petitioner next argues that he should be released in light of the post-trial affidavits submitted by two of the prosecution's witnesses. Petitioner raised this argument in his post-conviction proceedings before the Kentucky court, and after conducting hearings on the issue, the court found that the affidavits were false. Specifically, the court noted that the victim Lucy Elswick, repudiated her affidavit and reaffirmed her original testimony. Moreover, the court found that the allegations contained in her father's affidavit were discredited by other witnesses and were preposterous. Accordingly, the state court's finding of fact is entitled to a presumption of correctness and cannot be overturned under these circumstances by this court. Sumner v. Mata, 449 U.S. 539 (1981).
 
 
 9
 Petitioner contends that he was denied effective assistance of counsel because his trial counsel failed to conduct a proper investigation and further failed to adequately cross-examine the witnesses at trial. Specifically, petitioner contends that his defense counsel should have interviewed the victim prior to trial and should also have interviewed the doctor who examined her. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a defense attorney's representation was so deficient that it amounts to a deprivation of the right to counsel:
 
 
 10
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 11
 466 U.S. at 687. In sum, a criminal defendant must show both that his counsel's performance was deficient and that it prejudiced his defense. Meeks v. Bergen, 749 F.2d 322, 327 (6th Cir.1984). In the instant case, petitioner has failed to allege any facts which might have come to light had his trial counsel conducted a more thorough pretrial investigation. Nor has the petitioner presented any facts which could have been used to impeach the testimony of the victim during cross-examination. Accordingly, based on the record before us, we find that petitioner was not deprived of his sixth amendment right to counsel.
 
 
 12
 Petitioner argues that he was deprived of a fair trial based on the admission of certain evidence and the improper remarks of the prosecutor during the course of the trial. Specifically, the petitioner cites to a passage in the transcript in which the prosecutor asked Brenda Elswick whether she had offered to have sex with another female adult. (App. 101). Defense counsel immediately objected to the question and the trial judge sustained the objection and admonished the jury to disregard the question. Under these circumstances, we find that the single improper remark made by the prosecutor was not sufficiently egregious as to deprive the petitioner of his right to a fair trial.
 
 
 13
 Petitioner also argues that the prosecution should not have been allowed to present evidence regarding sexual contacts between the petitioner and the victim subsequent to the alleged rape. Petitioner raised this issue in his subsequent appeals and the Kentucky appellate courts have held that the evidence was admissible under Kentucky law. Claims of error involving state court evidentiary rulings are generally not cognizable in habeas proceedings. An issue concerning the admissibility of evidence does not arise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial. See Poole v. Perini, 659 F.2d 730 (6th Cir.1981), cert. denied, 455 U.S. 910 (1982). In light of the direct testimony offered by the victim regarding the circumstances of the alleged rape, we find that the admission of her further testimony describing subsequent incidents did not deprive petitioner of his right to a fair trial.
 
 
 14
 Petitioner also contends that the trial court erred by allowing the victim's younger sister to testify without first requiring her to take an oath. Moreover, petitioner contends that the defense counsel's failure to object to the unsworn testimony amounted to a deprivation of a right to counsel. Having reviewed the record, we find that the trial judge extensively examined the minor witness prior to allowing her testimony, and that petitioner has failed to show any prejudice which may have resulted from the fact that she did not take a formal oath prior to testifying before the jury. Accordingly, we find that the defense counsel's failure to object did not amount to an ineffective assistance of counsel under the standards enunciated in Strickland. Moreover, we find that petitioner has failed to satisfy the cause and prejudice test under Wainright v. Sykes, 433 U.S. 72 (1977), which would allow us to consider the issue for the first time in a petitioner's habeas proceeding.
 
 
 15
 Finally, petitioner claims that he was deprived of a fair trial by the prosecution's reference to a photograph which depicted the petitioner and his wife engaging in oral sex. It appears that petitioner raises this argument for the first time in the objections which he filed in response to the magistrate's report and recommendation. Petitioner's counsel did not object to the evidence at trial, and he apparently did not raise the issue in his subsequent appeals and post-conviction proceedings before the Kentucky courts. Assuming, although our feelings are to the contrary, that the trial counsel's failure to object to the pictorial evidence constitutes "cause" under Wainwright v. Sykes, we nevertheless conclude the petitioner has failed to demonstrate that the evidence was so prejudicial that he was deprived of his right to a fair trial.
 
 
 16
 For the foregoing reasons, the judgment of the district court denying the petition for habeas corpus is AFFIRMED.
 
 
 
 *
 Honorable James L. Graham, United States District Court, Southern District of Ohio, sitting by designation